OPINION OF THE COURT
 

 Fuchsberg, J.
 

 The Attorney-General, acting on a consumer complaint, instituted this special proceeding under subdivision 12 of section 63 of the Executive Law to enjoin respondent Avco’s use of a security clause in a loan agreement form. The petition alleged that the clause was illegal and void as against public policy on the theory that it constituted an impermissible waiver of the personal property exemption afforded a judgment debtor under CPLR 5205 (subd [a]). Special Term summarily declared the clause invalid for this reason. Although the Appellate Division, over a single dissent, affirmed the order and judgment, it did so on the ground that the provision was unconscionable (70 AD2d 859). We now reverse, holding that it is not illegal and that the determination of
 
 *387
 
 unconscionability was improperly made without any opportunity for an evidentiary presentation as to the commercial and bargaining context in which the clause appears.
 

 The clause at issue is one regularly inserted by Avco, a finance company, in its loan agreements. Its terms unmistakably provide: "This loan is secured by ** * * all household goods, furniture, appliances, and consumer goods of every kind and description owned at the time of the loan secured hereby, or at the time of any refinance or renewal thereof, or cash advanced under the loan agreement secured hereby, and located about the premises at the Debtor’s residence (unless otherwise stated) or at any other location to which the goods may be moved.”
 

 It is not denied that this language must be understood to create a security interest in items of personal property which include the ones made exempt from the reach of a judgment creditor by CPLR 5205 (subd [a]).
 
 [1]
 
 From its inception, this statute — along with its venerable antecedents — has embodied the humanitarian policy that the law should not permit the enforcement of judgments to such a point that debtors and their families are left in a state of abject deprivation (see
 
 Stewart v Brown,
 
 37 NY 350, 351;
 
 Griffin v Sutherland,
 
 14 Barb 456, 459).
 

 It is well recognized, however, that simply because the
 
 *388
 
 law exempts such property from levy and sale upon execution by a judgment creditor does not mean that the exemption statute was intended to serve the far more paternalistic function of restricting the freedom of debtors to dispose of these possessions as they wish (see
 
 Montford v Grohman,
 
 36 NC App 733;
 
 Mutual Loan & Thrift Corp. v Corn,
 
 182 Tenn 554;
 
 Swan v Bournes,
 
 47 Iowa 501, 503; 1 Jones, Chattel Mortgages and Conditional Sales [6th ed], § 114). No statute precludes exempt property from being sold; nor is there any which expressly interdicts the less drastic step of encumbering such property. So, for example, while contractual waivers of a debtor’s statutory exemptions are usually held to be void (see
 
 Caravaggio v Retirement Bd. of Teachers’ Retirement System,
 
 36 NY2d 348, 357-358;
 
 Kneettle v Newcomb,
 
 22 NY 249), the law has not forbidden a debtor to execute a mortgage upon the property so protected and thus create a lien which may be foreclosed despite the property’s exempt status (see Banking Law, § 356 [governing security interests in household furniture]; Uniform Commercial Code, § 9-102, subd [l];
 
 [2]
 

 Matter of Brooklyn Loan Corp. v Gross,
 
 259 App Div 165, 166;
 
 Emerson v Knapp,
 
 129 App Div 827; 6 Weinstein-Korn-Miller, NY Civ Prac, par 5205.7).
 
 [3]
 
 The clause here permits no more and, hence, cannot be said to contravene the exemption statute.
 

 The Attorney-General nevertheless argues that the clause should be invalidated under the doctrine of unconscionability. The contention, as accepted by the majority of the Appellate Division, is that "the inequality of bargaining position and the granting to the creditor of enforcement rights greater than those which the law confers upon a judgment creditor armed with execution, lead inevitably to the conclusion that the absence of choice on the part of the debtor left him with no recourse but to grant to his creditor rights which, in good
 
 *389
 
 conscience, the law should not enforce” (70 AD2d 859, 860). The clause is also alleged to be unconscionable in that its broad terms create security interests even in items not sold or financed by Avco and function mainly as an
 
 in terrorem
 
 device to spur repayment.
 

 In this connection, we note initially that the statute under which this proceeding was brought (Executive Law, § 63, subd 12) lists "unconscionable contractual provisions” as a type of "fraudulent” conduct against which the Attorney-General is authorized to move. Furthermore, an application for injunctive or other relief under this provision is one which may properly look to the exercise of a sound judicial discretion
 
 (State of New York v Princess Prestige Co.,
 
 42 NY2d 104, 108). But the petition here provided no opportunity for the operation of such discretion on the issue of unconscionability since it alleged only that the clause per se was "illegal” and "void as against public policy and contrary to law”, theories which, as we have seen, are not consonant with established law. Indeed, the only ground presented to nisi prius was that the clause violated CPLR 5205 (subd [a]); the petitioner never raised an unconscionability argument until it arrived at the Appellate Division.
 

 As a general proposition, unconscionability, a flexible doctrine with roots in equity (see
 
 Chesterfield v Janssen,
 
 Ves Sen 125, 155-156; 28 Eng Rep 82, 100 [Ch 1750];
 
 Hume v United States,
 
 132 US 406, 411), requires some showing of "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party”
 
 (Williams v Walker-Thomas Furniture Co.,
 
 350 F2d 445, 449). The concept, at least as defined in the Uniform Commercial Code — which both parties seem to agree governs the transactions at issue here — is not aimed at "disturbance of allocation of risks because of superior bargaining power” but, instead, at "the prevention of oppression and unfair surprise” (McKinney’s Cons Laws of NY, Book 62 VS, Uniform Commercial Code, § 2-302, Official Comment 1). To that extent at least it hailed a further retreat of
 
 caveat emptor.
 

 By its nature, a test so broadly stated is not a simple one, nor can it be mechanically applied (see White and Summers, Handbook on the Uniform Commercial Code [2d ed], p 151). So, no doubt precisely because the legal concept of unconscionability is intended to be sensitive to the realities and nuances
 
 *390
 
 of the bargaining process, the Uniform Commercial Code goes on to provide: "When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination” (Uniform Commercial Code, § 2-302, subd 2).
 

 That such evidence may be crucial is made plain too by the drafters’ own explication of unconscionability as "whether * * * the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract” (McKinney’s Cons Laws of NY, Book 62
 
 Vi,
 
 Uniform Commercial Code, § 2-302, Official Comment 1; see
 
 Wilson Trading Corp. v David Ferguson, Ltd.,
 
 23 NY2d 398, 403-404). And, in the light of this dependency upon the particular circumstances surrounding a transaction, courts and commentators have consistently construed subdivision 2 of section 2-302 to mandate at least the opportunity for an evidentiary hearing
 
 (Matter of People v Long Is. Home,
 
 32 AD2d 618 [proceeding under Executive Law, § 63, subd 12];
 
 Sinkoff Beverage Co. v Schlitz Brewing Co.,
 
 51 Misc 2d 446, 448;
 
 Fleischmann Distilling Corp. v Distillers Co.,
 
 395 F Supp 221, 233, n 18; see Ellinghaus, In Defense of Unconscionability, 78 Yale LJ 757, 812, n 257; 1 Anderson’s Uniform Commercial Code, § 2-302:5).
 

 But as indicated, here a case on unconscionability was not presented to Special Term either in form or substance. Nor was that issue available when raised on appeal for the first time (see, e.g.,
 
 City of New York v State of New York,
 
 39 NY2d 951, 953). Specifically, at no point did the Attorney-General by affidavits from borrowers or otherwise make any factual showing as to such matters as, for instance, deception of borrowers as to the clause’s content or existence (cf.
 
 Jefferson Credit Corp. v Marcano,
 
 60 Misc 2d 138;
 
 Matter of State of New York v ITM Corp.,
 
 52 Misc 2d 39), or the presence of language difficulties or illiteracy affecting its execution, or any other reasons that would have made it unlikely that consent was freely and knowingly given (see
 
 Frostifresh Corp. v Reynoso,
 
 52 Misc 2d 26), all within the embrace of what is sometimes referred to as "procedural unconscionability” (see White and Summers, Handbook of the Uniform Commercial Code [2d ed], § 4-3, at p 150). Nor, for that matter, in light of the limited scope of its petition, was there occasion to delve
 
 *391
 
 into, much less attempt to prove, the now belated assertion of so-called "substantive unconscionability” (see, generally, Leif, Unconscionability and the Code — The Emperor’s New Clause, 115 U of Pa L Rev 485, 487; cf.
 
 Jones v Star Credit Corp.,
 
 59 Misc 2d 189 [Wachtler, J.]).
 

 Accordingly, the order of the Appellate Division should be reversed and the petition should be dismissed, without costs, with leave to the petitioner to commence a new proceeding, if it be so advised.
 

 Chief Judge Cooke and Judges Jasen, Jones, Wachtler and Meyer concur; Judge Gabrielli taking no part.
 

 Order reversed, etc.
 

 [1]
 

 . CPLR 5205 (subd [a]) provides in pertinent part, as follows:
 

 "(a) Exemption for personal property. The following personal property when owned by any person is exempt from application to the satisfaction of a money judgment except where the judgment is for the purchase price of the exempt property or was recovered by a domestic, laboring person or mechanic for work performed by that person in such capacity:
 

 "1. all stoves kept for use in the judgment debtor’s dwelling house and necessary fuel therefor for sixty days; one sewing machine with its appurtenances;
 

 "2. the family bible, family pictures, and school books used by the judgment debtor or in the family; and other books, not exceeding fifty dollars in value, kept and used as part of the family or judgment debtor’s library;
 

 * * *
 

 "5. all wearing apparel, household furniture, one mechanical, gas or electric refrigerator, one radio receiver, one television set, crockery, tableware and cooking utensils necessary for the judgment debtor and the family;
 

 "6. a wedding ring; a watch not exceeding thirty-five dollars in value; and
 

 "7. necessary working tools and implements, including those of a mechanic, farm machinery, team, professional instruments, furniture and library, not exceeding six hundred dollars in value, together with the necessary food for the team for sixty days, provided, however, that the articles specified in this paragraph are necessary to the carrying on of the judgment debtor’s profession or calling.”
 

 [2]
 

 . This section originally recited that it applied to security interests created by contract in "any personal property and fixtures
 
 within the jurisdiction of this State”
 
 (emphasis mine). While the italicized language is missing from the revision, the deletion was intended solely to remove any restriction on out-of-State applicability (see Denonn, Supplementary Practice Commentary, McKinney’s Cons Laws of NY, Book 62V4, Uniform Commercial Code, § 9-102 [1979-1980 Supp]). That there was no intent to thereby exclude exempt property from mortgagability is apparent from subdivision 4 of section 9-203 which lists a variety of other statutes that may govern in cases of conflict but nowhere mentions CPLR 5205 (subd [a]).
 

 [3]
 

 . Notably, too, the Legislature has thrice declined to adopt an amendment to section 356 of the Banking Law which would have made security interests in household furniture invalid and unenforceable (see NY State Assembly, 1979 Banking Comm Bill Mem on A 5538).