■ LISTER ELECTRIC, INC., Respondent, v INCORPORATED VILLAGE OF CEDARHURST, Appellant. — In an action, *inter alia,* to recover damages for breach of contract, defendant appeals, as limited by its brief, from so much of a judgment of the Supreme Court, Nassau County (DiPaola, J.), dated May 20, 1983, as (1) awarded plaintiff the principal sum of $44,277.02 on its first and second causes of action and (2) dismissed defendant's counterclaim.

Judgment affirmed, insofar as appealed from, with costs.

The defendant village offered a contract for public bidding, calling for the installation of, *inter alia,* street lighting equipment within the village. Plaintiff's assignor, Broadway Maintenance Corporation (Broadway), successfully bid on the contract and the parties executed the contract on September 24, 1970. The contract was for a term of 120 months and provided, *inter alia,* that the village could lease the equipment with an option to purchase. The contract was thereafter assigned by Broadway to plaintiff on or about April 25, 1979. By letter dated August 21, 1980, defendant advised plaintiff that it had chosen to exercise its option to purchase all of the equipment installed by plaintiff's assignor "as of August 31, 1980", i.e., during the 120th month of the contract.

The parties agree that pursuant to the contract, the defendant could, by exercising its option to purchase in the last month of the contract, purchase any item of equipment installed during the first 21 months, for the monthly lease price multiplied by a factor of 100. The parties disagree, however, as to the meaning of the language used in the contract for determining the value of any items of equipment installed after the 21st month.

Specifically at issue in the case at bar is the meaning of the provision in the contract which purported to provide a formula for calculating the purchase price of those items of equipment installed after the 21st month of the contract.

The relevant provision is clause (iii) of section I of the bid proposal, which was incorporated by reference into the contract. It states: "(iii) — Any fixture installed after the 21st month shall be valued at the time of 'Exercising Right of Purchase' for the entire system as: monthly lease price times (100 minus the number of months elapsing between the 20th month and the month of installation)".

In its dispute with defendant, and in its verified amended complaint herein, plaintiff argued that this language was clear and unambiguous and supported its claim that the price of the street lighting equipment, which defendant chose to purchase in accordance with its option, was $44,277.02.

In its answer, defendant interposed (1) a general denial and (2) a counterclaim wherein it alleged that the purchase price formula stated in clause (iii) was the product of "mutual mistake" of the defendant and plaintiff's assignor. Specifically, defendant argued in its counterclaim that (1) the last words in that paragraph should have been "exercise of option to purchase" rather than "installation" and (2) the words actually used in the contract led to a result "obviously not intended by the parties to this contract", i.e., "the longer the lease ran before the exercise of the option to purchase, the greater the payment for each individual item". Accordingly, defendant demanded that the contract be reformed by amending the relevant paragraph to read as follows: "(iii) — Any fixture installed after the 21st month shall be valued at the time of 'Exercising Right of Purchase' for the entire system as: monthly lease price times 100 minus the number of months elapsing between the 20th month and the month of the exercise of the option to purchase". In accordance with that reformation and resulting formula for determining the value of the equipment, defendant argued that plaintiff was obligated to accept its check of $14,900.94, which it had previously tendered as payment for the fixtures.

After a nonjury trial, Special Term held for plaintiff on its first two causes of action in the principal sum of $44,277.02.

Special Term correctly held that (1) the language in the contract establishing the formula for fixing the purchase price of equipment installed after the 21st month of the contract was clear and unambiguous and (2) a plain and literal reading thereof supported plaintiff's claim for the principal sum of $44,277.02.

Special Term was also correct in holding that defendant failed to meet its burden of establishing, by clear and convincing evidence, that the language used was the result of mutual mistake and that reformation was appropriate in the case at bar (*Backer Mgt. Corp. v Acme Quilting Co.,* 46 NY2d 211, 219-220).

Moreover, on oral argument of this appeal, defendant abandoned the argument that the contract should be reformed due to mutual mistake.

On the instant appeal, defendant argues that the language contained in clause (iii), and the resulting formula for fixing the value of the street lighting equipment, was unconscionable as a matter of law. Specifically, defendant argues that the language was unconscionable in that it contained a formula whereby "the *longer* [it] had been paying a monthly lease charge for a fixture, the *larger* the buy-out price for that fixture; and the *shorter* the time frame during which [it] had paid monthly lease charges, the *lower* the buy-out price for the fixture in question".

We disagree with defendant's argument.

Initially, it should be noted that defendant failed to raise the issue of unconscionability at Special Term (*see, Matter of State of New York v Avco Fin. Serv.,* 50 NY2d 383; *Backer Mgt. Corp. v Acme Quilting Co.,* 46 NY2d 211, 216, *supra; Industralease Automated & Scientific Equip. Corp. v R.M.E. Enters.,* 58 AD2d 482, 487) and thus, has not preserved this issue for appellate review (*Arnold v New City Condominiums Corp.,* 88 AD2d 578). In any event, were we to reach this issue on the merits, we would be compelled to hold against defendant.

In defining the doctrine of unconscionability, our Court of Appeals has held (*Matter of State of New York v Avco Fin. Serv., supra,* p 389): "As a general proposition, unconscionability, a flexible doctrine with roots in equity (see *Chesterfield v Janssen,* Ves Sen 125, 155-156; 28 Eng Rep 82, 100 [Ch 1750]; *Hume v United States,* 132 US 406, 411), requires some showing of 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party' (*Williams v Walker-Thomas Furniture Co.,* 350 F2d 445, 449). The concept, at least as defined in the

Uniform Commericial Code — which both parties seem to agree governs the transactions at issue here — is not aimed at 'disturbance of allocation of risks because of superior bargaining power' but, instead, at 'the prevention of oppression and unfair surprise' (McKinney's Cons Laws of NY, Book 62½, Uniform Commercial Code, § 2-302, Official Comment 1)."

The Appellate Division, Fourth Department, in *Cayuga Harvester v Allis-Chalmers Corp.* (95 AD2d 5, 20), has noted: "In cases involving transactions of a commercial nature, courts have rarely found unconscionability, and it has been held that 'when businessmen contract in a commercial setting, a presumption of conscionability arises' (2 Anderson, Uniform Commercial Code [3d ed], § 2-302:39, p 444, citing *Earman Oil Co. v Burroughs Corp.*, 625 F2d 1291, 1300 [CA5th, 1980])".

The definition of unconscionability set forth in *Matter of State of New York v Avco Fin. Serv.* (*supra*), encompasses "two major elements which have been labeled by commentators, procedural and substantive unconscionability" (*State of New York v Wolowitz,* 96 AD2d 47, 67). The procedural element of unconscionability "concerns the contract formation process and the alleged lack of meaningful choice" (*State of New York v Wolowitz, supra,* p 67). Examples of procedural unconscionability include "inequality of bargaining power * * * and an imbalance in the understanding and acumen of the parties" (*State of New York v Wolowitz, supra,* p 67). Since the defendant itself prepared the instant contract for public bidding and the terms thereof were not subject to negotiation, its claim of unconscionability must necessarily fall. Moreover, the elements of the doctrine of unconscionability may not be disregarded simply because the party claiming to be victim of an unconscionable contract is a governmental entity (*cf. Euclid Ave. Assoc. v City of New York,* 64 AD2d 550).

We have examined defendant's remaining arguments and find them to be without merit. Lazer, J. P., Mangano, Bracken and Niehoff, JJ., concur.