**UNITED BANK OF BISMARCK,
Plaintiff and Appellee,**

v.

**Larry G. SELLAND, Defendant
and Appellant,**

and

**Debra K. Selland, Defendant.**

Civ. No. 880017.

Supreme Court of North Dakota.

July 19, 1988.

Robert O. Wefald of Wefald Law Office, Ltd., Bismarck, for plaintiff and appellee.

Larry G. Selland, McKenzie, pro se.

VANDE WALLE, Justice.

Larry G. Selland appealed from a county court order granting a writ of special execution under the authority of a previous judgment awarding United Bank of Bismarck [Bank] $5,450.84 plus interest in its action against Larry and Debra K. Selland. We affirm.

In March 1984 the Sellands received a $16,100 farm-operating loan from the Bank. The promissory note executed by the Sellands was due and payable December 15, 1984, and stated that the loan was secured by a security agreement covering "All Equipment, Machinery and Farm Products."[1] The Sellands defaulted, and in September 1985 the Bank brought an action to recover the unpaid balance due on the note plus accrued interest. After rejecting the Sellands' assertion of the confiscatory-price defense, the county court on November 19, 1986, entered judgment against the Sellands in the amount of $5,450.84 plus interest, and further granted the Bank "possession of the farm equipment and machinery pledged as security

1. The security agreement executed by the Sellands provides:
   "Debtor hereby grants Secured Party a security interest ... in the following property ...:
   \* \* \* \* \* \*
   "(b) EQUIPMENT, FARM PRODUCTS AND CONSUMER GOODS:
   "All equipment of Debtor, whether now owned or hereafter acquired, including but not limited to all present and future machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and recordkeeping equipment, parts and tools, and the goods described in any equipment schedule or list herewith or hereafter furnished to Secured Party by Debtor (but no such schedule or list need be furnished in order for the security interest granted herein to be valid as to all of Debtor's equipment).
   "All farm products of Debtor, whether now owned or hereafter acquired, including but not limited to (i) all poultry and livestock and their young, products thereof and produce thereof, (ii) all crops, whether annual or perennial, and the products thereof, and (iii) all feed, seed, fertilizer, medicines and other supplies used or produced by Debtor in farming operations...."

for the indebtedness owed to the plaintiff to the extent necessary to satisfy this judgment." The county court denied Larry Selland's motion to amend the judgment to delete the part granting possession of the farm machinery to the Bank.

After the sheriff attempted to serve a general execution, Selland, appearing pro se, filed a "Claim for Exemption" seeking to claim as exempt from execution, among other things, various items of farm machinery. The Bank responded with a motion seeking an order directing the sheriff to disregard Selland's claim for exemption with respect to the personal property pledged as security to the Bank. The county court denied the Bank's motion, stating that it would not issue a "broad declaration that given the nature of the security interest ... the exemption laws simply don't apply to this case." The court reasoned that although "[t]here is little doubt that the pledge of personal property as collateral on a note can result in a waiver of a claim for exemptions as to that personal property," the Bank had failed to specifically identify any property which might be the subject of a writ of special execution.

The Bank then filed a motion asking the court to authorize the issuance of a writ of special execution directing the sheriff to levy upon a "JD tractor" valued by Selland in his claim for exemptions "at $350, a 4320 JD tractor valued at $4,500, a 158 JD loader valued at $700, a 1981 NH mower (9') valued at $600, a 1977 Rowse rake (36') valued at $800 and any other farm machinery." The county court granted the motion, concluding that "the record of this proceeding establishes that a basis exists for the special execution." Selland appealed.

We believe the three major issues implicitly raised by Selland in this appeal are: (1) whether the security agreement contained an adequate description of the collateral; (2) whether the Bank impermissibly combined Uniform Commercial Code and non-Code remedies in these proceedings; and (3) whether the county court correctly ruled that Selland, by granting the Bank a security interest in his farm machinery, had waived his right to claim that personal property as exempt from process.

I

■ Selland asserts that the security agreement is defective because it does not list specific items of property, but merely gives the Bank a security interest in "all" farm machinery, equipment and farm products. We disagree.

Section 41–09–16(1)(a) [U.C.C. § 9–203], N.D.C.C., provides in pertinent part that "a security interest is not enforceable against the debtor ... with respect to the collateral and does not attach unless ... the debtor has signed a security agreement that contains a description of the collateral ..." Section 41–09–10 [U.C.C. § 9–110], N.D.C.C., further provides that "[e]xcept as provided in section 41–09–41 on formal requirements of a financing statement, any description of personal property or real estate whether or not it is specific is sufficient for the purposes of this chapter if it reasonably identifies what is described."

The "purpose of a description of collateral in a security agreement is only to evidence the agreement of the parties and therefore it need only 'make possible the identification of the thing described.'" *United States v. First National Bank in Ogallala, Neb.*, 470 F.2d 944, 947 (8th Cir. 1973) [quoting Official Comment to U.C.C. § 9–110]. The Official Comment to U.C.C. § 9–110 explains that "[u]nder this rule courts should refuse to follow the holdings, often found in the older chattel mortgage cases, that descriptions are insufficient unless they are of the most exact and detailed nature ..." 3 U.L.A. Uniform Commercial Code, at p. 208 (1981). Applying this reasoning, the vast majority of courts have held that descriptions of collateral virtually identical to that found in the security agreement in this case were sufficient. See, e.g., *United States v. First National Bank in Ogallala, Neb., supra* ["All farm and other equipment ... now owned or

hereafter acquired by Debtor ...''];  *Nolin Prod. Credit v. Canmer Deposit Bank,* 726 S.W.2d 693, 695 (Ky.Ct.App.1986) [''all farm machinery and equipment ...'']; see also, Annot., *Sufficiency of Description of Collateral in Security Agreement Under UCC §§ 9–110 and 9–203,* 100 A.L.R.3d 940 (1980); 8 R. Anderson, Uniform Commercial Code § 9–110:5 (1985). We believe the description in this case adequately fulfills the purpose ascribed to it under the Uniform Commercial Code and is not unacceptably vague in its designation of the property involved.

## II

■ Selland asserts that the Bank impermissibly combined Uniform Commercial Code and non-Code remedies by obtaining a money judgment for the balance due on the debt as well as a court order granting it possession of the collateral. Selland appears to argue that the Bank may not simultaneously pursue separate remedies, i.e., it may either use the remedy of foreclosure, in which case no money judgment is authorized, or, as we discuss in Part III, it may pursue the remedy of a money judgment and execution in which case he is entitled to claim his statutory exemptions.

Section 41–09–47(1) [U.C.C. § 9–501], N.D.C.C., provides in part that upon default a secured creditor "may reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure.... The rights and remedies referred to in this subsection are cumulative." Although a secured party's rights under Article 9 are cumulative, courts have noted that U.C.C. § 9–501(1) does not authorize a secured party "to 'harass a debtor by simultaneously pursuing two or more avenues of attack open to him.'" *Baldwin v. First National Bank of Black Hills,* 362 N.W.2d 85, 89 (S.D. 1985) [quoting White and Summers, *Uniform Commercial Code* § 26–4, at p. 765 (West 1972) ]. We have similarly observed that "[t]here may indeed be situations where a creditor in possession of collateral

has forfeited all rights to any alternative remedy, particularly when to hold otherwise would permit a double recovery, ..." *Advanced Irr., Inc. v. First Nat. Bank,* 366 N.W.2d 783, 785 (N.D.1985). However, that situation is not present in this case.

The county court granted the Bank possession of the collateral only "to the extent necessary to satisfy this judgment." Thus, the Bank is not allowed a double recovery because the collateral is ordered to be sold to satisfy the money judgment. Because a secured creditor does not waive his right to rely on the collateral when he proceeds by execution and levy to enforce the judgment on the underlying note against the debtor [see generally *Dakota Bank & Trust Co. of Bismarck v. Reed,* 402 N.W.2d 887, 892 (N.D.1987) ], we conclude that the Bank did not impermissibly combine the remedies available to it.

## III

■ Selland asserts that the farm machinery and equipment he pledged as security for the loan are exempt from process under Chapter 28–22, N.D.C.C. The county court ruled that the Sellands' pledge of the personal property as collateral for the note resulted in a waiver of a claim for exemption as to that personal property. We agree with the county court.

Section 28–22–14, N.D.C.C., provides that "[n]o property shall be exempt from execution or attachment in an action brought for its purchase price or any part thereof." Although this case involves a nonpurchase money security interest rather than a purchase money security interest which would be covered by § 28–22–14, N.D.C.C., it is widely accepted that a personal-property security agreement creates an implied waiver of the right to assert statutory exemptions as to the secured property. See *Beneficial Finance Co. of Colo. v. Schmuhl,* 713 P.2d 1294 (Colo.1986); *Aetna Finance Co. v. Antoine,* 343 So.2d 1195 (La.Ct.App.1977); *Moyer v. International State Bank,* 404 N.W.2d 274 (Minn.1987); *Hernandez v. S.I.C. Finance Co.,* 79 N.M.

673, 448 P.2d 474 (1968); *State v. Avco Financial Service, Etc.*, 50 N.Y.2d 383, 429 N.Y.S.2d 181, 406 N.E.2d 1075 (1980); *Montford v. Grohman*, 36 N.C.App. 733, 245 S.E.2d 219 (1978); Haines, *Security Interests in Exempt Personalty: Toward Safeguarding Basic Exempt Necessities*, 57 Notre Dame Law. 215 (1981).

The rationale employed by the courts for this rule is that although the exemption statutes are designed to protect debtors from becoming destitute as a consequence of unforeseeable indebtedness, the statutes should not be construed to deprive an individual of his rights of ownership in exempt property. This court has likewise recognized that "[e]xemption of property from execution or attachment is a privilege conferred upon the debtor and does not deprive him of any of the ordinary incidents of ownership of the exempted property among which is the power to encumber, to sell, or otherwise dispose of it." *Congress Candy Co. v. Farmer*, 73 N.D. 174, 189, 12 N.W.2d 796, 803 (1944). We agree with those courts which have considered the question and we conclude that the county court did not err in ruling that the Sellands had waived any right they had to claim an exemption with respect to the property they had pledged as security for the debt.[2]

We have considered the other issues raised by Selland and deem them to be without merit.

The order of the county court is affirmed.

ERICKSTAD, C.J., and LEVINE, MESCHKE and GIERKE, JJ., concur.

---

**2.** Possible statutory reforms to give debtors greater protection are discussed in Haines, *Security Interests in Exempt Personalty: Toward Safeguarding Basic Exempt Necessities*, 57 Notre Dame Law. 215 (1981).