MILL–BERN ASSOCIATES, INC.,
Plaintiff–Appellant,

v.

INTERNATIONAL BUSINESS
MACHINES CORPORATION,
Defendant–Appellee.

Docket No. 01–9411.

United States Court of Appeals,
Second Circuit.

Feb. 28, 2003.

Edward J. Byrnes, Burlington, MA (Theresa Kelly Banash, Wellesley, MA, on the brief), for Appellant.

Gregg Shapiro, Choate, Hall & Stewart, Boston, MA (Kevin J. Lesinski, Choate, Hall & Stewart, Boston MA, and Kenneth B. Wildstein, International Business Machines Corporation, White Plains, NY, on the brief), for Appellee.

Present: KEARSE, B.D. PARKER, Circuit Judges, and RAKOFF,* District Judge.

## SUMMARY ORDER

ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the District Court be and it hereby is AFFIRMED.

Plaintiff-appellant Mill–Bern Associates, Inc. appeals from a November 6, 2001 judgment of the United States District Court for the Southern District of New York (Richard Conway Casey, *Judge*), granting defendant-appellee IBM's motion for summary judgment and denying Mill–Bern's motion for partial summary judgment.

Beginning in 1993, Mill–Bern and IBM entered into a series of contracts whereby Mill–Bern served as a sales representative for IBM's semiconductor products and IBM paid sales commissions to Mill–Bern. The parties entered into the most recent of these agreements in January 1997 (the "1997 Agreement"). During 1997, Mill–Bern alleged that it had earned more commissions than IBM had paid; IBM disagreed. At a December 18, 1997 meeting, IBM informed Mill–Bern that it did not intend to enter into a new agreement with

Mill–Bern when the 1997 Agreement was due to expire on January 7, 1998. The next day, December 19, Mill–Bern provided IBM with written notice of its intent to terminate the 1997 Agreement for cause, on the basis of various alleged breaches by IBM.

IBM took the position that Mill–Bern's attempted termination of the 1997 Agreement was ineffective because it failed to provide IBM with the requisite thirty days notice to cure (i.e., Mill–Bern's notice came less than thirty days before the 1997 Agreement was to expire). IBM also contended that the 1997 Agreement expired on January 7, 1998 and that, under § 11(a) of the Agreement, it was not obligated to pay Mill–Bern any commissions for products shipped after that date. Mill–Bern, in contrast, took the position that it had properly terminated the 1997 Agreement for cause, and that, under § 11(d) of the Agreement, IBM was obligated to pay it commissions for all orders accepted by IBM prior to the December 19, 1997 termination notice and shipped within ninety days thereafter.

Faced with competing summary judgment motions, the District Court granted IBM's motion and denied Mill–Bern's. The court found that the one-year limitations period contained in the parties' agreements ("Neither party will bring any legal action against the other more than one year after the cause of action arose.") barred Mill–Bern's claims for commissions on orders that had been shipped more than one year before Mill–Bern filed suit, and that the 1997 Agreement expired on January 7, 1998, before Mill–Bern's attempt to terminate it could take effect, barring Mill–Bern's claims for commissions on orders shipped after January 7,

* The Honorable Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

1998. The District Court also rejected Mill–Bern's argument that the expiration provision of the 1997 Agreement was unconscionable. On appeal, Mill–Bern attacks each of the bases for the District Court's ruling. We address them in turn and agree with the District Court as to each.

■ Mill–Bern does not contest the existence of the one-year limitations period. Rather, it argues that IBM should be equitably estopped from relying on the limitations period because IBM failed to provide Mill–Bern with copies of the invoices from which Mill–Bern could have discerned the amount of the commissions that it had earned. Mill–Bern's equitable estoppel argument fails, however, because Mill–Bern has not alleged that its failure to file suit within the limitations period was "induced by fraud, misrepresentations or deception" on the part of IBM. *See Simcuski v. Saeli,* 44 N.Y.2d 442, 449, 406 N.Y.S.2d 259, 377 N.E.2d 713, 716 (N.Y.1978); *see also Dillman v. Combustion Eng'g, Inc.,* 784 F.2d 57, 60–61 (2d Cir.1986). Mill–Bern also argues, in the alternative, that it did commence "legal action" against IBM within the one-year limitations period. Mill–Bern argues that two letters it sent to IBM in 1994 and 1997, seeking the type of commissions that it seeks in this action, constituted "legal action" within the meaning of the contracts. Contrary to Mill–Bern's argument, the term "legal action" is not ambiguous, and it does not include Mill–Bern's letters. *See* Black's Law Dictionary 28 (6th ed.1990) (defining "action" as "a lawsuit brought in a court; a formal complaint within the jurisdiction of a court of law"). We conclude, as did the District Court, that Mill–Bern did not bring any legal action against IBM until it filed this lawsuit on March 26, 1998, and that all claims arising more than one year before that date are barred.

■ Next, Mill–Bern argues that it properly terminated the 1997 Agreement on December 19, 1997, entitling it to commissions on sales accepted by IBM prior to December 19 and shipped within ninety days thereafter. IBM argues, in response, that any termination of the 1997 Agreement had to be made on thirty days notice and, therefore, would not take effect until thirty days after the notice of termination. Under New York law, an attempt to terminate a contract containing a notice provision does not take effect until the notice period has passed. *See G.B. Kent & Sons, Ltd. v. Helena Rubinstein, Inc.,* 47 N.Y.2d 561, 565, 419 N.Y.S.2d 465, 393 N.E.2d 460, 467 (1979). As a result, by the time Mill–Bern's attempted termination could become effective—thirty days after its December 19, 1997 notice, or January 18, 1998—the 1997 Agreement had already expired by its terms, on January 7. We therefore agree with the District Court that the 1997 Agreement expired and was never properly terminated by Mill–Bern.

■ Lastly, we reject Mill–Bern's argument that the expiration provision of the 1997 Agreement—which stated that "any obligation of IBM to pay [Mill–Bern] Commission for orders which have been accepted by IBM as of the date of expiration of this Agreement" would "cease" upon the Agreement's "expiration"—was unconscionable. In order to succeed on its unconscionability argument, Mill–Bern must show that, in entering into the 1997 Agreement, it had "an absence of meaningful choice," resulting in "contract terms which are unreasonably favorable to the other party." *State v. Avco Fin. Serv. Inc.,* 50 N.Y.2d 383, 389, 429 N.Y.S.2d 181, 406 N.E.2d 1075, 1078 (1980). Unconscionability is a question of law for the court. *McNally Wellman Co. v. N.Y. State Elec. & Gas Corp.,* 63 F.3d 1188, 1198 (2d Cir. 1995). As the District Court noted, Mill–Bern is an experienced commercial enterprise and was represented by counsel at all

relevant times. Moreover, Mill–Bern was able to negotiate certain terms of the 1997 Agreement, yet it presented no evidence that it attempted to negotiate the expiration provision. While the expiration provision may have had unfortunate consequences for Mill–Bern, that alone does not render the provision unconscionable. *See Leasing Serv. Corp. v. Graham,* 646 F.Supp. 1410, 1418 (S.D.N.Y.1986) ("[A] party who knowingly enters a lawful but improvident contract is not entitled to protection by the courts.").

Accordingly, the judgment of the District Court is AFFIRMED.