BERNICE WILLIAMS AND REBA WILLIAMS DILWORTH
v. MARGARET OWEN ET AL

5-4915                                    444 S. W. 2d 237

Opinion delivered September 2, 1969

*Patten & Brown,* for appellants.

*Gaughan, Laney, Barnes & Roberts* and *Streett & Plunkett,* for appellees.

GEORGE ROSE SMITH, Justice. This case involves primarily the respective rights of the various parties to the use of a corridor or driveway, 232 feet long by 20 feet wide, that runs northwesterly from Highway 79 near Camden to a homestead owned by the appellants, Bernice Williams and her sister Reba Williams Dilworth. The appellants claim the exclusive fee ownership of the driveway, but the appellees assert public and private easements in their favor. This appeal is from a decree sustaining the appellees' contentions in several respects that can best be discussed one by one after the facts have been described in broad outline.

The Barney Joyces formerly owned a 40-acre tract abutting Highway 79 to the south. Over a period of several years the Joyces sold off various parcels, eventually retaining only a homestead of substantial size and the corridor now in dispute. In 1944 the Joyces sold the home place and the corridor to the appellants. Since then Bernice Williams and her mother have occupied the home and used the driveway.

In 1967 Miss Williams asserted her claim to exclusive ownership by erecting fences along both sides of the driveway throughout its length. Three separate suits were promptly filed by the appellees, all claiming easements in the disputed strip. The cases were consolidated for trial and ended in the decree now under review.

I. The appellants insist that the chancellor erred in vesting the fee title to the driveway in the appellees Harvey, who now own all the lands abutting the driveway on both sides. The decree, however, does not clearly so provide, and in this court the Harveys readily concede that they claim only an easement in the strip. Hence we need not discuss this point, which can be set at rest by the entry of a more precise decree on remand.

II. The chancellor found that public and private easements in the driveway were acquired by prescription after the Joyces sold their land. During the prescriptive years the lands now owned by the appellees were held in three separate ownerships. What we will call Tract 1 abutted the driveway along its western border. Tract 2 abutted the driveway on the east. Less than a year before this litigation arose the Harveys bought Tracts 1 and 2 and consequently now own all the lands on both sides of the corridor.

Tract 3 abuts the appellants' land on the east, the two southern boundaries forming a continuous line. The driveway reaches the appellants' southern boundary at a point five feet east of the southeast corner of their property. Hence Tract 3 is separated from the northeast corner of the disputed corridor by that distance of five feet. Thus the occupants of Tract 3 cannot reach the driveway except by crossing either the appellants' land to the west or Tract 2 to the south.

We consider first the chancellor's finding of private easements in the driveway. For more than seven of the prescriptive years the appellee Margaret Owen and her late husband owned and occupied Tract 3. Owen maintained a plumbing business in a small building east of the dwelling house on the property. Both the Owens and their customers continually used the driveway in going to and from Highway 79. According to the decided preponderance of the proof the Owens acquired a private easement in the driveway by adverse user for a period of more than seven years.

The chancellor erred, however, in extending that easement fifty feet northward along the eastern edge of the appellants' home place, thereby giving Mrs. Owen and her prospective purchaser, the appellee Beaver, the right to enter Tract 3 from the west by crossing the southeast corner of the appellants' homestead. According to the undisputed proof the Owens and their customers did not use that means of access to the Owens' property. Instead, by agreement with Fred Ragsdale, who owned Tract 2 to the south of the Owens' property, the Owens and their customers turned off the driveway before reaching the appellants' homestead and parked their cars along the north edge of Tract 2. Both Mrs. Owens and Ragsdale so testified. Hence the trial court's extension of the easement northward onto the appellants' home place must be set aside.

The appellees Harvey own all the land along both sides of the corridor from its southern terminus at Highway 79 to its northern terminus at the southern boundary of the appellants' home place. The chancellor found that the Harveys are entitled to use the driveway as a means of access to their lands on both sides and as a means of crossing from one side of the driveway to the other. The evidence, however, supports the decree only with respect to the land lying east of the corridor. We have mentioned the fact that the Owens, with Ragsdale's permission, used the driveway as a means of access to the northern part of Tract 2. There was also a public roadhouse fronting on Highway 79 at the southern end of the tract. Both the owner of the roadhouse and his patrons used the driveway for parking and as a means of access to the establishment. We find by the weight of the evidence that the owners of Tract 2 acquired an easement in the driveway as a means of access to that tract.

The situation is materially different with regard to the Harvey's land (Tract 1) lying west of the corridor. We find no persuasive proof that the owners of that

tract ever acquired a prescriptive easement by adverse user of the driveway for seven successive years. Part of the time there was a fence along that side of the corridor, which denied access to the tract. Moreover, the businesses that fronted on Highway 79 to the south—a barber shop and a filling station farther west—are not shown to have needed any lateral access from the corridor. We have pointed out that when an easement is acquired by prescription, the nature of the use cannot be changed to render it more burdensome to the servient estate than it was during the prescriptive period. *Craig v. O'Bryan,* 227 Ark. 681, 301 S. W. 2d 18 (1957). Hence even though the corridor is used as a driveway, the owners of Tract 1 have no rights therein, because none were acquired by prescription.

Upon this point we have not overlooked counsel's statement that the record is "replete" with references to use of the driveway from both sides of the Harveys' property. To support that assertion counsel merely cite 14 pages of the transcript. We have frequently pointed out that we are not required to search the transcript, which cannot conveniently be made accessible to all the seven judges. Counsel must abstract the testimony upon which they rely.

In the same vein it is appropriate for us to point out that the appellants' abstract of the record is also not above criticism. Rule 9 (d) provides that when a plat or other exhibit must be examined for a clear understanding of the testimony, the appellant must reproduce the exhibit and attach copies to his abstract. In this case the parties jointly introduced a plat of the lands in controversy. Our study of the testimony would have been made much easier had that plat been reproduced as contemplated by the Rule. In fact, a minority of the court would affirm the decree for noncompliance with the Rule. Even though a majority of us have found the infraction of the Rule not to be so serious as to require a summary affirmance of the decree, we take this op-

portunity of again emphasizing the importance of that provision in Rule 9 and the risk that attorneys run by not complying with it when there is a possibility that compliance may be found to have been mandatory.

Neither can we sustain the chancellor's finding that the general public acquired an easement in the driveway. The driveway was not a thoroughfare. It came to a dead end at the appellants' residence. In a case involving a similar cul-de-sac that was used almost daily by tradesmen and others for some twenty years as a means of access to a single dwelling, we held that the resulting easement was a private one appurtenant to the property rather than a public one. *Barbee* v. *Carpenter*, 223 Ark. 660, 267 S. W. 2d 768 (1954). That conclusion is manifestly desirable in the case at hand. If, for instance, Tracts 1, 2, and 3 and the appellants' homestead should all be acquired by one owner, there would be no reason for the lands to be burdened by a public easement. The recognition of a private easement provides the owners of Tract 2 and Tract 3, and their visitors, with all the rights of access to which they are reasonably entitled.

III. The appellants also complain of a provision in the chancellor's decree that quiets Mrs. Owen's title to the land lying east of the fence between her land and that of the appellants. The fence once followed a curved line. In 1951 it was straightened by agreement between the appellants and the Owens, with Owen paying $100 to the appellants as consideration for the modification of the boundary line. Ever since then the land within the fence has been occupied by the Owens (or by Mrs. Owen since her husband's death). The decided weight of the evidence supports the chancellor's finding, either upon the theory of agreed boundary line or upon the theory of adverse possession.

The decree is affirmed in part and reversed in part, and, the title to land being involved, the cause is remand-

ed for the entry of a decree pursuant to this opinion.

FOGLEMAN and BYRD, JJ., would affirm.

JOHN A. FOGLEMAN, Justice, concurring in part; dissenting in part. I would affirm the decree of the chancery court on all points. Rule 9 (d) of this court provides:

"* * * Whenever a map, plat, photograph, or other exhibit must be examined for a clear understanding of the testimony, the appellant shall reproduce such exhibit by photography or other process and attach such reproduction to the copies of the abstract filed in this court and served upon the opposing counsel, unless this requirement is shown to be impracticable and is waived by the court upon motion."

Without the plat mentioned in the majority opinion, the testimony is incomprehensible. The very points on which this court reverses the chancery court are the most difficult to understand. I am particularly reluctant to join in a reversal of a trial court upon an abstract that does not permit every member of the court to have a clear understanding of the evidence on the pertinent issues. Rule 9 (e) states:

"* * * When the case is considered on its merits the court may impose or withhold costs to compensate either party for the other party's non-compliance with this rule. The court may also affirm the judgment or decree for noncompliance with this rule."