Ina Lea (Miller) LEWIS *v.*
Jimmie R. MILLER and Mona Sue
MILLER, his wife

77-307                                                    563 S.W. 2d 435

Opinion delivered March 27, 1978
(Division I)

*Phillip J. Taylor,* for appellant.

*James L. Langston,* for appellees.

GEORGE ROSE SMITH, Justice. On October 20, 1976, Jimmie R. Miller and his wife filed this suit asking for a decree declaring that Miller's former sister-in-law, the appellant Ina Lea (Miller) Lewis, no longer has her original one-fourth lessee interest in a 10-year lease upon certain business property in Fort Smith. The controversy arose because the lease granted to the lessees what has proved to be a valuable option to purchase the leased premises for $55,000. This appeal is from a decree finding that Mrs. Lewis orally relinquished her interest in the lease and also is barred by laches from asserting that interest. We must reverse the decree as being clearly against the weight of the evidence.

When the 10-year lease was executed on February 19, 1968, Jimmie Miller and his brother Cecil were engaged in several businesses together. The lease was signed by the brothers and their wives as lessees. The leased premises were and still are the site of a fast-food store, the operation of which has been Jimmie Miller's responsibility from the beginning.

According to the appellees' proof, the Miller brothers terminated their business association at a joint meeting in a lawyer's office on May 31, 1968. Jimmie testified that both the wives attended that meeting. Jimmie Miller and his wife executed a deed conveying certain real estate to Cecil and Ina Lea. Jimmie testified that in return Cecil and Ina Lea orally relinquished their interest in the fast-food store, which had been leased about three months earlier.

Mrs. Lewis denies that she even attended the meeting in question and denies that she ever relinquished her interest as lessee. All the subsequent actions of the parties confirm her position. We refer briefly to some of the testimony:

(a)  In 1969 Jimmie, who had other interests, decided

that he did not want to continue to operate the fast-food store. On August 28, 1969, while Cecil and Ina Lea were still married, the two couples executed an 8-year sublease to C. R. Plank. That Cecil and Ina Lea joined in that sublease is hardly consistent with their having already relinquished their interest in the principal lease.

(b) Toward the end of the 10-year lease the value of the option to purchase became apparent. When the lessor of the premises sought to buy back the option to purchase, Jimmie told him that he would have to talk to Cecil — even though it is now contended that Cecil had released his interest many years earlier.

(c)   In that same connection Jimmie went to Ina Lea and sought to obtain an assignment of her interest in the lease.

(d)   Nine days before the suit was filed, Cecil finally made a written assignment of his interest to Jimmie. Cecil testified, however, that if Jimmie and his wife should die before the expiration of the 10-year lease, Cecil would expect that he and Ina Lea would be responsible for continuing to pay the rent (thereby, of course, keeping the option to purchase in force). Cecil also testified that if Jimmie succeeded in selling the option or the premises, he supposed that Jimmie would give him some of the money, as they were brothers.

We need not narrate the testimony in further detail. Even apart from the possible effect of the statute of frauds (Ark. Stat. Ann. § 38-105 [Repl. 1962]), which is argued, the almost undisputed proof shows that Mrs. Lewis did not relinquish her interest in the lease.

The chancellor's finding of laches rests on two circumstances, but neither is persuasive. First, Mrs. Lewis did not actively assert her interest in the lease until shortly before this suit was filed. There was, however, no reason for her to do so. The 8-year sublease specified exactly the same rent, $550 a month, as that specified in the principal lease. By agreement the subtenant paid the rent directly to the principal lessor and was never delinquent in his payments.

Therefore Mrs. Lewis had no rights that could have been actively asserted. Her situation was similar to that of a remainderman, who is not required to assert a possessory right during the life of the life tenant. *Smith* v. *Kappler,* 220 Ark. 10, 245 S.W. 2d 809 (1952).

Second, Mrs. Lewis's interest as lessee was not mentioned in the divorce decree which she obtained on May 3, 1971. Again, however, there was no particular reason for it to be mentioned. Mrs. Lewis had joined in the execution of the sublease almost two years earlier. No action under the terms of the lease or sublease was called for. The potential value of the option to purchase was apparently not yet realized. Cecil and Ina Lea's separate rights in the lease were individual contractual rights, not affected (as is dower, for example) by the continuation or termination of the marriage. There being no reason for either Ina Lea or Cecil to raise any issue about the lease in the divorce case, their failure to do so cannot be regarded as laches on the part of either. It will be remembered that many years after the divorce decree Cecil recognized his continued interest in the lease by assigning it to Jimmie. If the divorce decree concluded the parties' rights in the lease, that assignment was unnecessary.

Before concluding this opinion we think it appropriate to again call the bar's attention to the necessity for abstracting written exhibits instead of reproducing them in the abstract and brief. Here the material parts of the lease, of the sublease, and of the divorce decree could have been abstracted in a few sentences. Instead, the appellant's abstract reproduces those and other written instruments in full, some 18 legal-sized pages, although most of their contents are not relevant to the case. We therefore recopy here, for the information of attorneys, the per curiam order that was entered on February 13, 1978, and was published as follows in the Advance Reports for that date:

## NOTICE TO ATTORNEYS

### February 13, 1978

### Re: Attaching Exhibits to Abstract of the Record

PER CURIAM. In recent years a practice has grown up by which counsel attach to their abstracts and briefs typewritten, photographed, or Xeroxed copies of *written* exhibits, such as deeds, insurance policies, and similar instruments or documents. This practice is contrary both to Rules 8 and 11, which require that abstracts and briefs be *printed,* and to Rule 9 (d), as amended on February 9, 1976, which provides for the attachment of only those exhibits "which cannot be abstracted in words." Counsel's failure to abstract such exhibits frequently makes it impossible for the members of the court to properly consider the exhibits as reproduced. Effective April 1, 1978, the clerk will not accept abstracts and briefs not complying in this respect with the court's rules.

Reversed and remanded for the entry of a decree in favor of the appellant.

We agree. HARRIS, C.J., and HICKMAN and HOWARD, JJ.