THE CORNING BANK *v.*
THE BANK OF RECTOR

78-236                                             576 S.W. 2d 949

Opinion delivered February 19, 1979
(Division II)

70

*Scott Manatt,* for appellant.

*C. Joseph Calvin,* for appellee.

JOHN A. FOGLEMAN, Justice. Appellant has failed to demonstrate error in the court's holding that the lien of a real estate mortgage given by Gerayne Poole and his wife to appellee, The Bank of Rector, is prior and superior to an earlier security agreement between the Pooles and appellant, The Corning Bank. Consequently, we affirm the decree.

Appellee contends that the decree should be affirmed because of appellant's failure to abstract the record in compliance with Rule 9, Rules of the Supreme Court. We are handicapped by the manner in which appellant has abstracted the record in this case. It is not such a flagrant violation of Rule 9 as to require an affirmance under that rule, particularly in view of the fact that appellee has supplemented the record to supply some of the deficiencies. None of the pleadings are abstracted. Some of the security instruments (particularly those in favor of appellee) were incompletely abstracted by appellant, without specific transcript references being given. Appellant did place a photocopy of one side of its security agreement in a pocket of its brief, in violation of Rules 8, 9 (d) and 11 of the rules of this court, if it was intended as a substitute for abstracting. See, Per Curiam Order, Re: Attaching Exhibits to Abstract of the Record, February 13, 1978, 262 Ark. 911; *Lewis* v. *Miller*, 263 Ark. 154, 563 S.W. 2d 435. Excerpts from appellant's security agreement are scattered throughout appellant's abstract and brief (also without transcript references), and some of them are merely footnotes to appellant's argument. The decree entered was not abstracted, but appellee has abstracted the opinion of the chancellor to the extent necessary for us to understand the court's holding. Some reference is made by appellant to estimates showing the purchase price of the property involved. These estimates are not abstracted. Appellant says they were furnished to it prior to its disbursement of the funds secured by its security agreement. No evidence to support this statement is abstracted. We will treat the matter on the merits, but it must be remembered that the record on appeal is that which is abstracted. *Williams* v. *Owen*, 247 Ark. 42, 444 S.W. 2d 237.

The controversy involves grain bins which, at least at the time of the trial, were located on real estate on which The Bank of Rector held a mortgage dated May 17, 1976, and properly filed for record on the same day. Appellant contends that its financing statement and security agreement (a single instrument) dated March 17, 1976, covering the bins, made its security interest superior to the lien of the mortgage to appellee. The financing statement and security agreement contained no description of any real property and no indica-

tion whether the property described was located on, or to be located on, any real estate. This statement was filed in the office of the Circuit Court Clerk of Clay County on March 19, 1976, where financing statements are filed only by the name of the debtor. Since there was no land description in the instrument, it was not noted or recorded in any deed, mortgage, release deed or miscellaneous record book in that office. It was filed in the Uniform Commercial Code file.

The financing statement and security agreement upon which appellant relies refers to the property described as goods. The instrument, according to appellant, contains a covenant that the Pooles would not sell, exchange, lease or otherwise dispose of the "goods" or any of the debtor's rights therein, without the written consent of appellant. It also contained the following clauses:

> Debtor, upon demand by secured party, shall assemble the goods and make them available to secured party at a place reasonably convenient to both parties.

> Until default hereunder, debtor shall be entitled to possession of the goods and to use and enjoy the same.

There was also a provision that the property would be retained at the place of business of Greenway Elevator Co. at P. O. Box 94, Greenway, Arkansas.

The critical issues in this case, according to appellant, are whether the property involved is a fixture and whether a "fixture filing" was required to preserve the priority of appellant's security interest. The chancellor held that each of the grain bins consisted of a floor, roof and sides and that they constituted buildings, were "permanent property" and a part of the real estate. He also held that there was nothing on file to put appellee on notice of appellant's security interest. We cannot say that the chancellor erred.

Under the Uniform Commercial Code, goods are fixtures when they become so related to the real estate that an interest in them arises under real estate law. Ark. Stat. Ann. § 85-9-313 (1) (a) (Supp. 1977). Unless the facts are un-

disputed and reasonable minds could only reach one conclusion, the question whether particular property constitutes a fixture is sometimes one of fact only, but usually is a mixed question of law and fact. See, *Thos. Cox & Sons Machinery Co. v. Blue Trap Rock Co.*, 159 Ark. 209, 251 S.W. 699; *Taylor v. Walker*, 127 Ark. 541, 192 S.W. 895; *British & American Mortgage Co. v. Scott*, 70 Ark. 230, 65 S.W. 936; 35 Am. Jur. 2d 759, Fixtures, § 75; 36A CJS 738, Fixtures, § 64.

In reviewing the evidence on this question, we are aided in our understanding of it by photographs reproduced by appellee. W. J. Hurst, whose occupation is selling and erecting grain bins similar to those involved, had inspected these bins. He appears to have been the only witness on the question of whether the bins were fixtures. According to him: a bin, the size of these, would require a "12-foot deep footing" and four to six inches of concrete over the balance of the surface; the bins, which have dimensions of 22 feet by 21 feet and a capacity of 7,000 bushels, are constructed on this foundation from side sheets 34 inches wide and 79 inches long; they are attached to the foundation by steel bolts and nuts; it would take three days to construct these bins; a bin can be removed from the foundation by removing the nuts from the bolts with a crescent wrench and the motor attached to the bins can be removed in the same way; the motor and a three-phase fan are detachable and can be changed readily; the bins can be removed and put in a truck and hauled away (leaving only a concrete slab with bolts sticking up) but it is not practical to do so, and special equipment, similar to house moving equipment, would be required; the bins could not be moved without being completely disassembled; a house could be removed "by the same token;" and the bins can be "taken down in reverse order in which they are erected." Hurst knew of two bins that had been moved, but they were on sand and wired to the ground, not set in concrete.

In *Ozark* v. *Adams*, 73 Ark. 227, 83 S.W. 920, we reiterated the basic rules for determining whether an article remains a chattel or becomes a fixture. They are: (1) real or constructive annexation to the realty in question; (2) appropriation or adaptation to the use or purpose of that part of the realty with which it is connected; and (3) the intention

of the party making the annexation to make a permanent accession to the realty, this intention being inferred from the nature of the chattel, the relation and situation of the party making the annexation, the structure and mode of annexation and the purpose for which the annexation has been made. A consideration of the various facts in this case seems to support a finding that the property in question was intended to be a permanent accession to the land and therefore it became a fixture. The person making the annexation was the owner of the realty; the realty was being used as a grain storage facility and the chattels in question were grain storage bins; the bins were assembled and erected on the realty and this installation involved the pouring of a concrete slab with bolts imbedded in it. The inference is strong, where the party attaching the "fixture" is the owner of the soil, that it was intended to become a part of the soil and not a removable fixture, and to overturn it, there must be strong evidence of a contrary intention manifested by some act or circumstance. *Thompson & Co.* v. *Lewis,* 120 Ark. 252, 179 S.W. 343. In the case just cited, emphasis was given to the fact that the machinery involved was attached to the soil in the manner customary for the use of that type of machinery. We do not consider the case of *Cherokee Carpet Mills, Inc.* v. *Manly Jail Works, Inc.,* 257 Ark. 1041, 521 S.W. 2d 528, relied upon by appellant, as materially affecting the rules herein stated, or as being particularly favorable to appellant's position. We simply are unable to say that the finding that the property involved here constituted a fixture is clearly against the preponderance of the evidence.

If we can assume from the record before us that, at the time the security agreement was executed, the bins had not been assembled or placed on the lands described in the mortgage to appellee,[1] the decision in this case turns upon the effect of the filing by appellant as notice to appellee. In this case, we consider Ark. Stat. Ann. § 85-9-313 (Supp. 1977) as controlling.

---

[1]In its statement of the case appellant states that Gerayne Pool obtained financing to purchase "two grain bins on the property subsequently mortgaged to the Bank of Rector, to-wit, real property, the moneys for the purchase of the grain bins coming from the Corning Bank." No transcript reference is given and none of the abstracted evidence provides this information.    :

In this connection, we do not consider the fact that appellee's mortgage was taken and recorded in reliance upon a title opinion based upon an abstract which was made prior to the date of the filing of appellant's security agreement. In any event, appellee caused an examination of the records to be made by an abstractor on the day after its mortgage was filed. The issue does not turn upon the information appellee had. It depends upon what a proper search would have disclosed.

The abstractor did not find appellee's security agreement because it was not filed or recorded in the real estate records. The abstractor testified that, if the document had contained a legal description, he would have found it. The only description relied upon by appellant as a land description was the statement that the property would be located at the Greenway Elevator Company at Greenway, Arkansas, which, as we have pointed out, was identified only by a post-office box number. We do not consider this as a sufficient key to identification of real estate to meet Uniform Commercial Code requirements.

The description was sufficient only if it reasonably identified the real estate. Ark. Stat. Ann. § 85-9-110 (Add. 1961). The test is whether the description made possible the identification of the real estate. Commentary, § 85-9-110. See also *Piggott State Bank* v. *Pollard Gin Co.*, 243 Ark. 159, 419 S.W. 2d 120; *People's Bank* v. *Pioneer Food Industries, Inc.*, 253 Ark. 277, 486 S.W. 2d 24. In a financing statement filed as a fixture filing, the description of the real estate must be sufficient to have given constructive notice of a real estate mortgage under the law of this state if it had been included in a mortgage of the real estate described. Ark. Stat. Ann. § 85-9-402 (5). This description did not meet this test. It is true that a real estate mortgage will not be held void for uncertainty, even as to third persons, where the description used in the mortgage furnishes a key whereby one, aided by extrinsic evidence, can ascertain what property is covered. *Caraway Bank* v. *U.S.A.*, 258 Ark. 858, 529 S.W. 2d 351. The name and address of the mortgagor would hardly furnish that key, particularly when the address is a post-office box number. To be sufficient, the description must make reference to something *tangible* by

which the property can be located. *Snyder v. Bridewell,* 167 Ark. 8, 267 S.W. 561; *New England Securities Co. v. West Helena Consol. Co.,* 177 Ark. 849, 8 S.W. 2d 440. This requirement was not met.

On the basis of the evidence before him, the chancellor was justified in holding that appellant's collateral was goods which were, or were to become, fixtures, so that, in order to establish the priority of its security agreement, a "fixture filing" must have been made in the office where a mortgage on real estate would be filed or recorded, before the interest of a subsequent encumbrancer is placed of record. Ark. Stat. Ann. § 85-9-313 (1) (b), (4) (b). There is no indication that appellant complied or attempted to comply with the requirements for a "fixture filing." There was no recitation in the instrument that it was to be filed for record in the real estate records and it did not contain a description of the real estate sufficient to give constructive notice of a mortgage of the real estate. Ark. Stat. Ann. § 85-9-402 (5) (Supp. 1977). Thus, the circuit clerk was not called upon to index the instrument as he would have if it had been a real estate mortgage. Ark. Stat. Ann. § 85-9-403 (7) (Supp. 1977).

We do not regard appellant's argument that its priority was established under § 85-9-313 (5) as having any merit. That section provides that a security interest, whether or not perfected, has priority over the conflicting interest of an encumbrancer or owner of the real estate where the encumbrancer or owner has consented in writing to the security interest. Appellant takes the position that Poole was both encumbrancer and owner. He was not the encumbrancer. The Bank of Rector was. An encumbrancer is one who holds a burden, charge or lien on property or an estate to the diminution of the value of the fee, but which does not prevent the passing of the fee by conveyance. Webster's New International Dictionary, 2d Ed. See also, Black's Law Dictionary (DeLuxe 4th Ed.), pp. 620, 908. Since The Bank of Rector did not give its consent, appellant did not have priority over that bank's interest as an encumbrancer.

Appellant also contends that a "fixture filing" was not necessary because "trade fixtures" are not actually fixtures as

contemplated by the Uniform Commercial Code. We cannot see how these bins can be classified as "trade fixtures," and removable from the realty as such. It is commonly accepted that trade fixtures are articles erected or annexed to realty by a *tenant* for the purpose of carrying on a trade, and removable by him during his term (provided the removal does not affect the essential characteristics of the article removed or reduce it to a mass of crude materials) upon grounds of public policy and because, from the nature of the tenure, they are not presumed to have been annexed with the intention of making them permanent additions to the realty. *Field* v. *Morris*, 95 Ark. 268, 129 S.W. 543; *Barnes* v. *Jeffus*, 173 Ark. 100, 291 S.W. 990; *Bennett* v. *Taylor*, 185 Ark. 794, 49 S.W. 2d 608. Poole was not a tenant, and from the testimony of Hurst, the bins could have been removed only by reducing them to a mass of crude materials.

Appellant has failed to demonstrate error in the decree, so it is

Affirmed.

We agree. HARRIS, C.J., and HOLT and HICKMAN, JJ.