785 S.W.2d 226 (1990)
27 Ark.App. 117
J.A. WOMACK and W.A. Beaver, Appellants,
v.
NEWMAN FIXTURE CO., Appellee.
No. CA 88-325.
Court of Appeals of Arkansas, En Banc.
January 31, 1990.
*227 Tim A. Womack, Camden, for appellants.
William K. Ball, Monticello, for appellee.
MAYFIELD, Judge.
The court issued an opinion in this case on March 22, 1989, affirming the trial court's decision holding the appellee's security interest in certain restaurant equipment superior to the appellants' security interest. See Womack v. Newman Fixture Co., 27 Ark.App. 117, 766 S.W.2d 949 (1989). That decision was based upon the finding that appellants' financing statement did not adequately describe the collateral.
In the original brief filed by appellants they argued that the description of their collateral was sufficient; that the appellee was guilty of laches and unclean hands; and that the appellee's claim having been previously dismissed two times should not have been reinstated by the trial court. Appellants filed a petition for rehearing confined to the issue of the adequacy of the description. Specifically, the petition argues that our original opinion overlooked the appellants' contention that the adequacy of the description should be considered in the light of the actual knowledge appellee had about the collateral involved in this case. We agree that our opinion did not fully address this important point, and it is proper for the petition for rehearing to call this matter to our attention. See Rule 20 of the Rules of the Supreme Court and Court of Appeals. After careful study, we have concluded that the petition for rehearing should be granted.
This case arose out of the installation of equipment in a restaurant which was to be operated in a new building owned by the appellants J.A. Womack and W.A. Beaver in Camden, Arkansas. The restaurant was to be operated by Larry D. Stafford. The equipment was purchased by Stafford from the appellee Newman Fixture Company. Before making the purchase, Stafford contacted Tommy Newman who was vice-president of the appellee company and Newman made a list of the individual pieces of equipment, and the price of each, that he and Stafford thought would be needed in the restaurant. Stafford took this list to The Merchants & Planters Bank of Camden, Arkansas, and arranged for a loan to finance the purchase of the equipment. This resulted in a note signed by Stafford, which incorporated a lien on the equipment to be purchased, and a financing statement was also signed by Stafford.
In August of 1983, the financing statement was properly filed with the Circuit Clerk in Camden and the Secretary of State in Little Rock. The financing statement shows the debtor's name as "Larry D. Stafford d/b/a Chick-N-Shack" and lists the debtor's address as "314 North Adams, Camden, Ark. 71701." The bank's name and mailing address are shown on the statement and it is signed for the bank by an assistant vice-president. The statement describes the collateral as "All equipment used in the business known as," and on the back of the statement the description continues by stating "and all replacements thereof and all accessories, parts and equipment now or hereafter affixed thereto or used in connection therewith...."
At this point, it should be noted that Stafford's note to the bank was guaranteed by the appellants Womack and Beaver who signed the note for that stated purpose. Newman Fixture Company began installing the restaurant equipment in Womack and Beaver's building even before the building was completely finished. Eventually Newman submitted an invoice to Stafford and was paid all but $4,617.92 of the purchase price and Newman had Stafford sign a financing statement and security agreement to secure this balance due. This instrument was filed with the Circuit Clerk in Camden and the Secretary of State in Little Rock. The debtor's name is shown as "Stafford, Larry d/b/a Chick-N-Shack," and the address listed is "310 Adams Avenue, Camden, AR 71701." Attached to the instrument is a copy of the Newman invoice. It is undisputed that this instrument was filed more than six months after the *228 bank's financing statement was filed. And it is undisputed that the bank called upon the appellants, Womack and Beaver, to pay Stafford's note in accordance with their guarantee and that they made the payment and took an assignment of the bank's rights under its security agreement and financing statement.
Before proceeding to the issue of the sufficiency of the description in the bank's financing statement, we briefly review the law that gets us to that issue. Actually, the bank and Newman Fixture Company both assert a purchase money security interest in the restaurant equipment purchased by Stafford. Ark.Stat. Ann. § 85-9-107 (Add.1961) (now Ark.Code Ann. § 4-9-107 (1987)), provides:
A security interest is a "purchase money security interest" to the extent that it is
(a) taken or retained by the seller of the collateral to secure all or part of its price; or
(b) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.
Under Ark.Stat.Ann. § 85-9-203(1) and (2) (Supp.1985) (now Ark.Code Ann. § 4-9-203(1) and (2) (1987)), the bank's security interest "attached" when (a) the debtor signed a security agreement which described the collateral, (b) value had been given by the bank, and (c) Stafford had rights in the collateral. No one disputes the fact that the bank gave value by making Stafford a loan of $30,000.00 to be used to purchase the equipment; that Stafford signed the bank's note and security agreement; that Stafford applied most of that money to the purchase price of the equipment; and that the equipment was delivered to Stafford for him to use. In 8 Anderson, Uniform Commercial Code § 9-203:48 (1985), it is stated:
The Code does not require that all three conditions for attachment be satisfied at the same time. Likewise, the order in which they are satisfied has no significance.
While the debtor must have rights in the collateral before the interest attaches, there is no requirement that he have such interest when the security agreement is made. The security agreement may be executed before any of the other elements are satisfied and that fact does not invalidate or impair the security agreement. Subject to certain limitations, the parties may agree that the security interest shall attach to described goods not yet owned by the debtor.
However, Newman also had a purchase money security interest in the equipment under Ark.Stat.Ann. § 85-9-107(a), supra, because it obtained a security agreement from Stafford on the equipment to secure that part of the purchase not paid when the equipment was delivered. Ark.Stat.Ann. § 85-9-312(4) (Supp.1985) (now Ark.Code Ann. § 4-9-312(4) (1987)), provides:
(4) A purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral or its proceeds if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within twenty-one (21) days thereafter.
A security interest is perfected by the filing of a financing statement. See Ark. Stat.Ann. § 85-9-302 (Supp.1985) (now Ark.Code Ann. § 4-9-302 (1987)). (There are some exceptions, one of which is when the collateral is in possession of the secured party, but none of the exceptions apply here.) So, since both the Bank and Newman had purchase money security interests, perfected by the filing of financing statements, section (4), supra, does not tell us which purchase money security interest had priority, but under the provisions of section (5) of Ark.Stat.Ann. § 85-9-312 (Supp.1985) (now Ark.Code Ann. § 4-9-312), it would appear to go to the party who first filed a financing statement. Section (5), as it pertains to this case, provides:
(5) In all cases not governed by other rules stated in this section (including cases of purchase money security interests *229 which do not qualify for the special priorities set forth in subsections (3) and (4) of this section), priority between conflicting security interests in the same collateral shall be determined according to the following rules:
(a) Conflicting security interests rank according to priority in time of filing or perfection.
In 2 White and Summers, Uniform Commercial Code, § 26-5 at 516 (3rd ed. 1988), it is stated:
If one does not meet one of the conditions in (3) or (4), he "does not qualify," but is the same true if he and his competitor do meet the test of (3) or (4)? We believe so. If Bank lends the down payment, seller lends the rest and each file within ten days [this would be 21 days in Arkansas], both (and therefore neither) are "entitled to the special priority" in subsection (4). Although one might argue that such creditors should share pro rata and neither receive priority, we believe that the proper rule is to go to the subsection (5) residuary clause and award priority to the winner there.
The rationale of the above statement is explained in 2 White and Summers, Uniform Commercial Code, supra, as follows:
Because the drafters chose to permit perfection by possession and by other non-filing acts, they could not simply give priority to the first to file. However, they went as far as possible in that direction and 9-312(5)(a) is the result: the first to file wins if both perfect by filing. Since filing is a public act the timing of which can be proved with accuracy from public records, it is the most certain and satisfactory of the measuring points for priority.
See § 26-4 at 498. In the instant case, the bank perfected its lien by filing its financing statement first. Thus, under the undisputed evidence, the bank's security interest has priority over Newman's security interest. This gets us back to the sufficiency-of-description issue.
The trial court found the bank's description insufficient and our original opinion agreed. However, neither the trial court nor this court fully discussed the appellants' contention, made in briefs filed in both courts, that the adequacy of the description should be considered in the light of the appellee's actual knowledge. The appellants' brief in this court cited the case of United States v. Riceland Foods, 504 F.Supp. 1258 (E.D.Ark.1981), which states that the Commercial Code provides that any description is sufficient "whether or not it is specific if it reasonably identifies what is described." Id. at 1262. See Ark. Stat.Ann. § 85-9-110 (Add.1961) (now Ark. Code Ann. § 4-9-110 (1987)), which makes this specific provision. Riceland also points out that the official comment to this section states: "The test of sufficiency of a description ... is that the description do the job assigned to itthat it make possible the identification of the thing described." 504 F.Supp. at 1262. See "Comment to Uniform Commercial Code" following Ark.Stat.Ann. § 85-9-110, which makes the same statement. (The comment is not included following Ark.Code Ann. § 4-9-110.) Also, in oral argument, the appellants cited the case of Security Tire & Rubber Co. v. Hlass, 246 Ark. 1113, 441 S.W.2d 91 (1969), which refers to an Arkansas Law Review article written by Mr. Harry Meeks wherein he cites authorities that "point out that the description need not be such as would enable a stranger to select the property and that a description of collateral is sufficient if it will enable third persons, aided by inquiries which the instrument itself suggests, to identify the property." 246 Ark. at 1117, 441 S.W.2d 91.
There are two points to note in regard to the Hlass case. First, the collateral in that case is described as the "Company owned inventory of Stephens Tire Company, 2517 Alma Highway, Van Buren, Arkansas," and the court said:
When we consider that the term "inventory" is defined in Ark.Stat.Ann. § 85-9-109(4), we believe that a fact issue was made by which the goods involved here could possibly be identified under the agreement given. *230 246 Ark. at 1117-18, 441 S.W.2d 91. So, the Arkansas Supreme Court in Hlass reversed the trial court's grant of summary judgment made because the trial court found the description of the collateral insufficient as a matter of law.
In the second place, we note that the court in Hlass made no apparent distinction between the sufficiency of the description of the collateral required in the security agreement as compared to that required in the financing statement. Some commentaries take the position that the description in a financing agreement may be less specific than the description in a security agreement since the financing statement is intended only to give notice while the security agreement operates as a statute of frauds between the parties and must be sufficient to identify the collateral. See, e.g., 8 Anderson, Uniform Commercial Code, § 9-110:6, at 602 (1985). However, a recent case, which has been favorably viewed in the commentaries, holds otherwise. See Nolin Production Credit Ass'n v. Canmer Deposit Bank, 726 S.W.2d 693 (Ky.App.1986), which states:
[T]he present test to be applied in circumstances such as those now involved is, in effect, an "inquiry test" under which a description of collateral is sufficient for either a security agreement or a financing statement if it puts subsequent creditors on notice so that, aided by inquiry, they may reasonably identify the collateral involved.
726 S.W.2d at 697.
Certain collateral was described in Nolin as "all farm machinery and equipment including but not limited to tractor and all property similar thereto." The trial court had held this description too general. In B. Clark, The Law of Secured Transactions Under the Uniform Commercial Code § 2.9[5][c] at 2-45 (1980), the author states that "the weight of judicial authority upholds general descriptions of equipment in the financing statement" and that "these decisions seem clearly correct." The author points out, however, that some courts require more specificity than the generic term "equipment," and the case of Mammoth Cave Production Credit Ass'n v. York, 429 S.W.2d 26 (Ky.1968) is cited as an example of this; but the author of the commentary says that case "seems dead wrong." See § 2.9[5][c] at 2-46. In a supplement to Clark's commentary, the Nolin Production Credit Ass'n case is said to have rejected the Mammoth Cave case which was "criticized sharply in the main volume" and that Nolin "has it all over the court in Mammoth Cave in terms of Article 9 analysis." See B. Clark, The Law of Secured Transactions Under the Uniform Commercial Code § 2.9[5][c] at S2-67 (1987 Cumulative Supplement No. 3). See also United Bank of Bismarck v. Selland, 425 N.W.2d 921 (N.D.1988), which relied upon the Nolin case to hold "All Equipment, Machinery and Farm Products" sufficient as a description of collateral.
In the instant case, there is no issue raised on appeal as to the sufficiency of the security agreement. While Newman did plead that neither the security agreement nor the financing agreement contained a sufficient description, the transcript shows no objection to the introduction of the security agreement between the bank and Stafford, and there was no argument to the trial court that the description of the collateral in the bank's security agreement was insufficient. Actually, the bank's note states the purpose of the loan is to "purchase equipment" and states the note is secured by the equipment. The note incorporates a security agreement, which is signed by Stafford, and which states the security includes "all my property specifically listed and, if a general description is used ... all of my property fitting the general description." So, even if the security agreement were at issue, the description would be sufficient under Ark.Stat. Ann. § 85-9-110 (now Ark.Code Ann. § 4-9-110) which provides that "any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described." There is, however, no argument about the security agreement description and the trial court based its decision solely on a finding that the description of the collateral in the financing statement was not sufficient.
*231 As to the law with regard to the description required under section 85-9-402, (now Ark.Code Ann. § 4-9-402 (1987)), which deals with the filing of financing statements, 9 Anderson, Uniform Commercial Code § 9-402:6 (1985), contains the following discussion at 447-48:
The objective of filing a financing statement is to give notice of the existence of the security interest of the creditor in the described collateral.
The main purpose of the "notice filing" provisions of the Code is to provide a public record with sufficient content to alert an interested party that there may be a prior security interest.
Further inquiry beyond the financing statement is contemplated by the Code as "the financing statement's purpose is to merely alert the third party as to the need for further investigation, never to provide a comprehensive data bank as to the details of prior security arrangements."
The notice system of the Code places the burden of further inquiry upon anyone seeking additional information. The fact that the financing statement is not intended to be all-informative is borne out by the fact that the statement must contain "an address of the secured party from which information concerning the security interest may be obtained...."
When a proper filing is made, third persons are presumed to have notice of and are subject to the provisions of the security agreement. A person is charged with possessing the information that could have been discovered had he made the inquiry suggested by the filing.
The sufficiency of a financing statement must be appraised in the light of the objective of the Code system of merely giving notice. The provisions of UCC § 9-402 are designed to repudiate the highly specific disclosures that were required under former chattel mortgage statutes. If the statement gives notice that a third person may have a security interest in the collateral, and the source from which additional information may be obtained, the statement is sufficient. All that is required is a short, simple, and concise financing statement. A court should sustain a financing statement as sufficient if sufficient information can reasonably be gleaned from it to enable those desiring to reach the secured party to do so.
Many cases are cited to support the above statements. For example, the first case cited is Associates Capital Corp. v. Bank of Huntsville, 49 Ala.App. 523, 274 So.2d 80 (Ala.Civ.App.1973), which held that a financing statement is sufficient if it gives notice that "there is need for investigation" as to the scope of the security interest. That court further stated:
The purpose of filing the financing statement is notice to any third party. The requirement of the description of the collateral is not for the purpose of informing such third party that the exact item which he is considering taking as security is already subject to a prior security interest, without further inquiry,.... The requirement of "a description that reasonably identifies" is satisfied if it reasonably informs third parties that a certain identifiable item,... belonging to or in the possession of a debtor may be subject to a prior security interest and that further inquiry is necessary to determine if it is the same [item] being offered them as collateral. Such is known as "notice filing." It merely places other parties on notice that there is need for investigation before taking as security for a loan items of the same type belonging to the debtor or which he intends to purchase.
274 So.2d at 83. See also In re King-Porter Company, 446 F.2d 722 (5th Cir.1971), where the court said: "The financing statements here disclosed sufficient information to enable any concerned creditor to contact the bank or claimant. The Code helps only those who help themselves." Id. at 729.
In the instant case, Tommy Newman, vice-president of appellee, Newman Fixture Company, testified he knew that Larry Stafford was going to get a loan from a bank to pay for the equipment sold to Stafford by Newman Fixture Company; that Stafford paid all but $4,617.92 of the *232 $23,117.92 invoiced price of the equipment; and that Newman's invoice was made to "Chick-N-Shack, 310 Adams Ave., Camden, Ark."
Tommy Newman also testified that he personally made several trips to Camden to deliver the equipment to Stafford and that it was installed in a restaurant in a building under construction. Newman Fixture Company filed a financing statement on the balance due for the equipment delivered. The statement shows that the debtor is "Stafford, Larry DBA Chick-N-Shack," and the address for the debtor is listed "310 Adams Avenue, Camden, AR 71701." This is also the name of the debtor listed on the bank's financing statement, although the address listed on the bank's statement is "314 North Adams, Camden, Ark. 71701" (Stafford testified the Chick-N-Shack was at either 312 or 314.) The property listed as covered by the bank's statement was "All equipment used in the business known as," and although no name was given after the word "as," the debtor listed on the bank's financing statement was "Larry D. Stafford d/b/a Chick-N-Shack" and that business was in the very building to which Newman was delivering the equipment to be used in the operation of the restaurant located in that building. Cases cited above hold that a description is sufficient if it "make[s] possible identification of the thing described," Riceland, supra, and that "the description need not be such as would enable a stranger to select the property" but is sufficient if it "will enable third parties, aided by inquiries which the instrument itself suggests, to identify the property," Hlass, supra.
The description in the instant case surely gave notice of the existence of the bank's security interest just as much as did the language in the Hlass case. There the collateral was described as the "Company owned inventory of Stephens Tire Company" and the address of the company was given. Here, the collateral is described as "All equipment used in the business known as," and the name and address of the business are listed at the top of the financing statement. We have cited authority stating that general descriptions of equipment will be upheld. See also 2 White and Summers, supra, § 24-18 at 380, stating "Numerous cases generally uphold, as not overbroad, descriptions formulated in terms of Code categories: accounts, general intangibles, consumer goods, equipment, farm products, inventory, and so on." (Emphasis added.) The word "equipment" is defined in Ark.Stat.Ann. § 85-9-109(2) (Ark.Code Ann. § 4-9-109(2), just as the word "inventory" is defined in that statute (as the Hlass opinion noted). Moreover, Ark.Stat.Ann. § 85-9-402(8) (Supp.1985) (Ark.Code Ann. § 4-9-402(8)), provides: "A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading." So, even though the address of Larry Stafford d/b/a Chick-N-Shack is listed as 310 Adams Ave. in Newman's invoice and is listed as 314 North Adams in the bank's financing statement, Tommy Newman, vice-president of the appellee Newman Fixture Company, was not misled (regardless of which address was correct) because Tommy Newman knew where he delivered and installed the equipment which he sold to Larry Stafford d/b/a Chick-N-Shack, and it is clearly proper to consider what Tommy Newman knew. The Hlass case applied a test that said, in part, that a description "need not be such as would enable a stranger to select the property." And in E-B Grain Company v. Denton, 73 N.C.App. 14, 325 S.E.2d 522, 527 (1985), the court held the "debtors' mailing address ... not so incomplete as to be misleading," and added: "We are cognizant of the fact that defendant Stephenson had regular business dealings with the debtor, and so was in a position to directly inquire about plaintiff's security interest had defendant wished to do so."
Therefore, under the facts known by Newman at the time its financing statement was filed, the bank's financing statement already on file would have given Newman notice of the bank's lien on "all the equipment" that Newman delivered to the Chick-N-Shack restaurant on Adams Street in Camden, Arkansas. Tommy *233 Newman admitted he did not search the records in the circuit clerk's office in Camden before filing his company's financing statement, but had he looked he would have known, even without further inquiry, that the bank claimed a security interest in the equipment he was installing for use in the restaurant. Under the law and the evidence in this case, we think the bank has a lien that is superior to the lien of the appellee, and that the trial court's finding to the contrary is clearly erroneous. Ark. R.Civ.P. 52(a).
It might be helpful to add a note about the case of Corning Bank v. Bank of Rector, 265 Ark. 68, 576 S.W.2d 949 (1979), which was cited in the brief of each party and discussed in our conference. (That case cites some Commercial Code statutes which were found at that time in the 1977 Supplement to the Arkansas Statutes Annotated. Those statutes may now be found in the 1985 Supplement.) The case involved grain bins found, under Ark.Stat. Ann. § 85-9-313(1)(a) (Supp.1977) (now Ark.Code Ann. § 4-9-313(1)(a) (1987)), to be so related to the land on which they were located as to be fixtures and therefore a part of the real estate. A security interest may be created in fixtures, see Ark.Stat.Ann. § 85-9-313(2) (Supp.1985) (now Ark.Code Ann. § 4-9-313(2)), by a "fixture filing" in the office where a mortgage on real estate would be filed or recorded, Ark.Stat.Ann. § 85-9-313(1)(b) (Supp.1985) (now Ark.Code Ann. § 4-9-313(1)(b)). The Corning Bank case pointed out that under Ark.Stat.Ann. § 85-9-402(5)(Supp.1977) (now Ark.Code Ann. § 4-9-402(5) (1987)) a financing statement filed as a "fixture filing" had to recite that it was filed in the real estate records and contain "a description of the real estate sufficient if it were contained in a mortgage of the real estate to give constructive notice of the mortgage under the law of this state."
The court in Corning said the financing statement in that case "contained no description of any real property and no indication whether the property described [the grain bins] was located on, or to be located on, any real estate." 265 Ark. at 71-72, 576 S.W.2d 949. Under this evidence, the appellate court affirmed the trial court's finding that the financing statement involved did not give notice of the appellant's security interest.
This holding in Corning, however, has nothing to do with the case at bar. Here, we are not dealing with fixtures and no "fixture filing" was required. The above provisions relating to "fixture filing" were part of Act 116 of 1973 which amended Article 9 of the Commercial Code enacted by Act 185 of 1961. That these changes with respect to fixtures did not change the law involved in the case at bar is made clear by the case of Ward v. First National Bank, 292 Ark. 21, 728 S.W.2d 149 (1987), which did not involve fixtures and which cited and relied upon Hlass and Riceland Foods, supra, for the law that is also applicable to the case at bar.
We are also aware of the recent decision of the Arkansas Supreme Court in the case of Affiliated Food Stores, Inc. v. Farmers and Merchants Bank of Des Arc, Arkansas, 300 Ark. 450, 780 S.W.2d 20 (1989), holding that the security interest of the party who first filed its financing statement in the proper place was entitled to priority over the security interest of the party whose financing statement was not filed in the proper place. That issue, however, has nothing to do with the issue here. In this case both parties filed in the proper place. In the Affiliated Food Stores case, the language "first to file correctly" was directed toward "place of filing" not "description of collateral."
That opinion also holds that the word "knowledge" as used in Ark.Code Ann. § 4-9-401(2) (1987), means "actual rather than constructive knowledge" because that section says the filing of a financing statement "in good faith in an improper place" is effective against any person who has "knowledge of the contents of such financing statement." That is specific knowledge statutorily required in order to excuse the failure to file in the proper place. Here, the issue is whether the description in the financing statement "will enable third persons, aided by inquiries which the instrument *234 itself suggests, to identify the property," and is a completely different issue from the one involved in the Affiliated Food Stores case.
The trial court's decree is reversed and this matter is remanded for further proceedings consistent with this opinion.
ROGERS and CRACRAFT, JJ., dissent.
ROGERS, Judge, dissenting.
In this opinion, the majority at least tacitly recognizes that the description contained in the bank's financing statement is inadequate. Yet, it is being held that this description should be deemed adequate because of certain facts presumed to have been known by appellee's agent, Newman. Assuming for the moment that "actual knowledge" is relevant to a determination as to whether a description is sufficient, it is unclear to me whether the majority is holding that Newman actually knew of the bank's prior security interest, or whether he was possessed of sufficient knowledge such that he should have had constructive notice of the bank's lien. Nevertheless, neither proposition is supported by the facts, and for this court to make such assumptions based on this record is beyond the realm of our appellate review, even when our review is de novo.
In order to demonstrate my point, further elaboration on the "facts" is necessary. In April of 1983, Newman met with Stafford who was then only considering going into the chicken restaurant business. At this time, Stafford was seeking an idea of the estimated cost of this type of undertaking, and in response Newman prepared an estimate listing the necessary equipment and its cost. In speaking of this proposal, Stafford testified that it was "rough-scratched." The site of the business was not determined until some three months later, and actual construction was not begun until September. There is no evidence in the record that Stafford and Newman had ever had any business dealings together prior to this instance, or afterwards.
In the meantime, Stafford obtained a loan from the bank using the estimate, which was referenced as an attachment to the security agreement entered into by those parties. The security agreement was not filed along with the bank's financing statement in August. According to Newman's testimony, he did not know that the estimate he provided would be used to obtain a loan. He further testified that he was unaware of the particular financing arrangements Stafford had made.
This testimony was obviously credited by the trial court in its denial of the appellants' defense of unclean hands. The appellants contended that the actual cost of the equipment supplied was much lower than that reflected in the original estimate. Appellants thus argued that Stafford and Newman had colluded to inflate the cost of the equipment in the proposal in order for Stafford to obtain a higher loan. In our original opinion in this matter, we said that the credibility and the weight to be given the testimony are matters for the determination of the trial court, and the appellate court is not at liberty to disregard any testimony which the trial court has accorded some weight, citing Herrick v. Robinson, 267 Ark. 576, 592, 595 S.W.2d 637, 647 (1980).
Yet, the majority has now concluded that the appellee had "actual knowledge," based upon the facts that Newman delivered the equipment, and the financing statement named the debtor as "Stafford, Larry d/b/a Chick-N-Shack." The question of actual knowledge was addressed in our original opinion where we deemed this to have been a question of fact resolved by the trial court in appellee's favor, and we found that we could not say that the finding of the trial court was clearly erroneous. Ark.R.Civ.P. 52(a).
The determination of whether a description in a financing statement is adequate is a question of fact. Security Tire & Rubber Co. Inc. v. Hlass, 246 Ark. 1113, 441 S.W.2d 91 (1969). The Code provides that any description of the personal property or real estate is sufficient, whether or not it is specific, if it reasonably identifies what is described. Ark.Code Ann. § 4-9-110 *235 (1987). In United States v. Riceland Foods, Inc., 504 F.Supp. 1258 (E.D.Ark. 1981), it was pointed out that the test is that the description do the job assigned to itthat it make possible the identification of the thing described.
It cannot be said of the description in this case, which purports to cover "[a]ll equipment used in the business known as," that it reasonably identifies the collateral, or that it makes possible the identification of the thing described. As found by the trial court, there is nothing in the description to provide a key to the identity of the collateral. And, as was stated in the original opinion in this case, this "description neither indicates where the equipment could be located, nor does it disclose the name of the business where the equipment was to be used." The problem with this description then lies in its being an incomplete sentence and its failure to state the name of the business where the equipment could be located, and not necessarily with the usage of the general term "equipment." Being so incompletely stated, this description cannot possibly put anyone on notice as to the collateral covered. As such, it does not provide even constructive notice because it suggests nothing to provoke further inquiry (unless the majority would also hold that a subsequent creditor has a duty to inquire at all times when faced with a wholly inadequate description).
Yet, the majority has attempted to cure this deficiency by stating that the financing statement also named the debtor, the business and the address, and this was known to Newman because of his delivery of the equipment to that location. Of course, the Code requires every financing statement to include the name and address of the debtor, in addition to a description of the collateral. See Ark.Code Ann. § 4-9-402(1) (1987) (emphasis supplied). Simple reference to the name of a debtor listed in a separate part of the financing statement says nothing of the collateral which also must be described. Moreover, the majority's logic concerning the curative function of so naming the debtor is faulty because it does not always, or necessarily, follow that the name and business address of the debtor designated is actually where the collateral can be located or is to be used, as fortuitously happened in this case. Thus a description should be judged by its own terms, and not by cross-reference to another part of the financing statement.
I am also not convinced that the principles gleaned from the cases and authorities cited by the majority support the view that "actual knowledge" is determinative when considering the adequacy of a description in a financing statement. The issue here is whether, based on the adequacy of the description, the appellant's security interest takes precedence over that of the appellee. None of the cases cited hinged upon the actual or presumed knowledge of the subsequent creditor as a test for determining the adequacy of a description, which consequently worked to cure a description which was deficient on its face. Certainly none of the cases cited deal with an analogous fact situation, and in each of the cases cited, there was something in the description itself which formed the basis for its being deemed adequate. For example, in Security Tire and Rubber Co., Inc. v. Hlass, Supra, the collateral was described as "Company owned inventory of Stephens Tire Company, 2517 Alma Highway, Van Buren, Arkansas." In reversing the trial court's conclusion that the description of the collateral as "inventory" was insufficient as a matter of law, the court considered it important that the description also named the business and the address where the inventory could be located. There is no such qualifying language describing the "equipment" in the instant case.
At this point, I should mention something about the case of Affiliated Food Stores, Inc. v. Farmers & Merchants Bank of Des Arc, Arkansas, 300 Ark. 450, 780 S.W.2d 20 (1989), which is discussed in the majority opinion. There the court held that the bank's security interest could not prevail over the subsequent creditor because the bank had not filed its financing statement in the proper place. The court found that Ark.Code Ann. § 4-9-401(2) *236 (1987) was inapplicable under the facts of that case because there was no evidence that the subsequent creditor had "actual knowledge of the bank's interest." Arkansas Code Annotated § 4-9-401(2) provides in part that a filing which is made in good faith in an improper place ... is effective with regard to collateral covered by the financing statement against any person who has knowledge of the contents of such financing statement. The majority points out that the issue here, the adequacy of the description, is different from the issue addressed in Affiliated Food Stores, where under that Code provision one's security interest may prevail despite an improper filing as against another who has actual knowledge of the contents of a financing statement. I agree with the majority that the two situations are distinguishable, but the difference is precisely my point. There is no concomitant code provision with respect to the description requirement, or any of the requirements found in Ark.Code Ann. § 4-9-402(1) (1987), the code section at issue here, regarding "actual knowledge." Had the drafter's of the Code intended that "actual knowledge" play a role in determining the adequacy of a description in a financing statement, as it does in situations involving improper filing, they certainly could have so provided. In sum, the majority's emphasis on "actual knowledge," which is the sole basis for granting the petition for rehearing, is strained and arguably inapplicable to the question at hand, even if the facts of this case supported such a conclusion.
While I can agree with the majority that "notice filing" was all that was contemplated by the drafter's of the Code, in my view, the facts here do not support a finding of either actual or constructive notice, particularly when such findings are based on the presumed knowledge of facts which were contrary to those found by the trial court. The majority has ignored the reality that this issue is a question of fact, and seems to have construed the evidence based on their own interpretation of relevant facts without giving due regard to the perspective of the trial court. I cannot so readily attribute such apparent or presumed knowledge to Newman as this court has done. Appellate courts should let judges and juries find facts, and we should refrain from assuming the trial court's function or second guessing them.
Furthermore, from a commercial standpoint, it is impractical to attribute such knowledge to a businessman who has many such dealings, when the description provides no reference or warning as to the intended collateral. The Code may not require a high degree of specificity, but it does envision some commercially practical minimum standard which is diminished and relaxed beyond recognition by the holding in this case. As the majority has pointed out, "[t]he Code helps only those who help themselves." In re King-Porter Co., Inc., 446 F.2d 722 (5th Cir.1971). I submit that this statement can be applied in this instance against sustaining the description found here. It is neither onerous, nor unreasonable to require a financing statement to make clear its intended collateral.
CRACRAFT, J., joins in this dissent.