******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# ROCKSTONE CAPITAL, LLC
## *v.* JOHN SANZO ET AL.
### (SC 20041)

Robinson, C. J., and Palmer, McDonald, D'Auria,
Mullins, Kahn and Ecker, Js.

*Syllabus*

The plaintiff brought an action seeking to foreclose judgment liens on certain real property owned by the defendants J and M. The liens had been recorded to secure a debt owed in connection with a prior judgment rendered against J and M. The parties thereafter entered into a forbearance agreement pursuant to which J and M were to make payments on the debt owed and to grant the plaintiff a mortgage on their property securing those obligations, and the plaintiff was to refrain from pursuing the foreclosure action for as long as J and M made their required payments. The mortgage included a waiver of the statutory (§ 52-352b [t]) homestead exemption for J and M's property. When J and M defaulted on their payments under the forbearance agreement, the plaintiff filed a motion to foreclose on the judgment liens. J and M objected to the motion and invoked the homestead exemption, and the plaintiff withdrew its claim as to the judgment liens and amended its complaint, seeking instead to foreclose on the mortgage. The trial court determined that the forbearance agreement was void as against public policy and denied the plaintiff's claim to foreclose on the mortgage. The trial court also determined that the homestead exemption should apply. The court rendered judgment for the plaintiff on the judgment liens, subject to the homestead exemption, but did not determine the amount of the debt, the manner of foreclosure or set law days. The plaintiff appealed to the Appellate Court from the denial of its request to foreclose on the mortgage, and J and M cross appealed from that portion of the judgment granting foreclosure of the judgment liens. The Appellate Court concluded that it had jurisdiction over the plaintiff's appeal because the trial court's denial of the plaintiff's claim to foreclose on the mortgage constituted a final judgment and reversed the trial court's judgment on the ground that the homestead exemption did not apply to a consensual lien such as a mortgage. The Appellate Court also concluded that it had jurisdiction over the cross appeal filed by J and M because, although it was not based on a final judgment, it was inextricably intertwined with the plaintiff's appeal, which was based on a final judgment. The Appellate Court reversed the trial court's judgment on the merits of the cross appeal because the plaintiff's operative complaint did not seek foreclosure of the judgment liens. On the granting of certification, J and M appealed to this court. *Held*:

1. The Appellate Court had jurisdiction over the plaintiff's appeal from the trial court's denial of its request to foreclose on the mortgage, as the trial court's denial of that request, which was the only relief the plaintiff sought in its operative complaint, constituted a final judgment, and, contrary to the claim made by J and M that the trial court did not render a final judgment because it ruled sua sponte for the plaintiff on the judgment liens and failed to set the amount of debt, manner of foreclosure or law days, that ruling did not defeat the final judgment rendered on the mortgage, as the plaintiff did not seek foreclosure of the judgment liens in its operative complaint; moreover, this court concluded, after examining the record and considering the briefs and arguments of the parties, that certification was improvidently granted on the issue of whether the Appellate Court had jurisdiction over the cross appeal from the trial court's ruling on the judgment liens, and, therefore, the present appeal was dismissed as to that issue.

2. The plaintiff having sought, in its operative complaint, to foreclose on the mortgage that J and M voluntarily had granted to it, which was a consensual lien, rather than to foreclose on the nonconsensual judgment liens that previously had been filed, the Appellate Court correctly concluded that the homestead exemption did not apply, and, contrary to the claim of J and M, the mortgage was enforceable and was not contrary

to the text of § 52-352b (t) or public policy: this court's plain reading of the text of § 52-352b (t) led it to reject the claim of J and M that a mortgage securing preexisting judgment debt could not be a consensual lien under that statute, and nothing in the statute (§ 52-350f) limiting a judgment creditor's collection efforts to nonexempt assets prohibits parties from restructuring a judgment debt into a consensual lien, to which the homestead exemption would not apply, as the parties did in the present case; moreover, waiver of the homestead exemption through a mortgage is routinely permitted, and practical considerations supported the allowance of such a waiver inasmuch as disallowing it would severely restrict the availability of much needed credit to debtors, and as J and M appeared to deliberately choose to mortgage their home and receive forbearance from foreclosure on the judgment liens in exchange for the mortgage.

Argued January 15—officially released July 16, 2019

*Procedural History*

Action to foreclose judgment liens on certain real property owned by the named defendant et al., and for other relief, brought to the Superior Court in the judicial district of Fairfield and tried to the court, *Hon. Richard P. Gilardi*, judge trial referee, who, exercising the powers of the Superior Court, rendered judgment in part for the plaintiff, from which the plaintiff appealed and the named defendant et al. cross appealed to the Appellate Court, *DiPentima*, *C. J.*, and *Beach* and *Bishop*, *Js.*, which reversed the trial court's judgment and remanded the case for further proceedings; thereafter, the named defendant et al., on the granting of certification, appealed to this court. *Affirmed in part*; *appeal dismissed in part*.

*Matthew K. Beatman*, with whom, on the brief, was *John L. Cesaroni*, for the appellants (named defendant et al.).

*Houston Putnam Lowry*, with whom, on the brief, was *Dale M. Clayton*, for the appellee (plaintiff).

*David Lavery* and *Loraine Martinez* filed a brief for the Connecticut Fair Housing Center as amicus curiae.

*Opinion*

D'AURIA, J. If a creditor forecloses on a debtor's home, the debtor might be entitled to keep a portion of the home's value, whatever the amount of the debt. This debtor protection, known as the homestead exemption, is available when the creditor forecloses on a judgment lien, but not on a consensual lien. See General Statutes § 52-352b (t).[1] In this case, the plaintiff, Rockstone Capital, LLC (Rockstone), held judgment liens against the defendants John Sanzo and Maria Sanzo.[2] The parties later agreed to a consensual lien in the form of a mortgage to secure the debt. Now, the Sanzos have defaulted on the mortgage payments, and Rockstone seeks to foreclose on the mortgage. The primary issue on appeal is whether the Sanzos are entitled to the homestead exemption. We conclude they are not.

The trial court found the following facts, as stipulated by the parties and contained in exhibits submitted to the court. The Sanzos' primary residence is in Monroe and most recently was valued at $500,000. In 2000, Fleet National Bank (Fleet) secured a judgment against them for about $100,000. To secure the debt, it recorded judgment liens on the Monroe property. Fleet later assigned its interests in the judgment and judgment liens to Rockstone.

In 2008, Rockstone initiated this action to foreclose on the judgment liens because the Sanzos had defaulted. The parties, however, entered into a forbearance agreement that halted the action. Under the agreement, the Sanzos were to make regular payments on the amount outstanding on the judgment liens and additional interest, costs, and fees, and to grant Rockstone a mortgage on the Monroe property securing these obligations. In exchange, Rockstone agreed to refrain from pursuing this foreclosure action for as long as the Sanzos made their payments. The parties stipulated that they were represented by counsel and that their agreement was a commercial agreement.

The record also reflects the following procedural history. In 2014, Rockstone resumed this action, filing a motion to foreclose on the judgment liens because the Sanzos had defaulted on their obligations under the forbearance agreement. The Sanzos objected to the motion and invoked the homestead exemption. In response, Rockstone amended its complaint to seek foreclosure on the mortgage, instead of on the judgment liens. The Sanzos filed an answer, including a special defense that claimed the mortgage was a de facto waiver of the homestead exemption, which was contrary to public policy.

The action was submitted to the trial court on stipulations and exhibits submitted by the parties. Following an initial decision that the parties agreed was improper,[3] the court issued a corrected memorandum of decision.

In it, the court acknowledged that the Sanzos had "voluntarily enabled [Rockstone] to seek recovery without the homestead exemption's applicability" and that "the homestead exemption would ordinarily not be applicable to a mortgage created by a voluntary agreement such as the one at hand." But based on the "unique procedural history" of the case, in which "the progression of this action has been to get around the homestead exemption," the court decided that the exemption should apply nonetheless. It held that the forbearance agreement was void as against public policy and therefore denied Rockstone's claim to foreclose on the mortgage. It also rendered judgment for Rockstone on the judgment liens, subject to the homestead exemption, even though Rockstone had amended its complaint to withdraw its claim regarding the judgment liens. The court did not determine the amount of debt, manner of foreclosure or law days for the judgment lien foreclosure.

Rockstone appealed and the Sanzos cross appealed to the Appellate Court. Rockstone appealed from the denial of its request to foreclose on the mortgage, and the Sanzos cross appealed from the judgment on the judgment liens. Because the trial court had not determined the amount of debt, manner of foreclosure or law days for the judgment lien foreclosure, the Appellate Court ordered a hearing to determine whether it should dismiss the appeals for lack of a final judgment. Following that hearing, the Appellate Court ordered the trial court to articulate its ruling and, after receiving the articulation, ordered the parties to address the final judgment question in their merits briefs to that court.

The Appellate Court concluded that it had jurisdiction over Rockstone's appeal because the trial court's denial of Rockstone's claim to foreclose on the mortgage constituted a final judgment. *Rockstone Capital, LLC* v. *Sanzo*, 175 Conn. App. 770, 778, 171 A.3d 77 (2017). It reversed the judgment of the trial court on the merits of Rockstone's appeal, holding that the homestead exemption did not apply to a consensual lien such as a mortgage. Id., 784. The Appellate Court also concluded that it had jurisdiction over the Sanzos' cross appeal because, although it was not based on a final judgment, it was inextricably intertwined with Rockstone's appeal, which was based on a final judgment. Id., 786. Finally, it reversed the judgment of the trial court on the merits of the cross appeal because Rockstone's operative complaint had not sought foreclosure on the judgment liens. Id., 788–89.

The Sanzos petitioned this court for certification to appeal, which we granted, limited to the following issues: "1. Did the Appellate Court properly conclude that the appeal and cross appeal were taken from a final judgment of the trial court? 2. If the answer to the first question is yes, did the Appellate Court properly

conclude that the plaintiff's postjudgment mortgage encumbering the same property and the same debt as the plaintiff's judgment liens was a consensual lien, and not a de facto waiver of the homestead exemption; see General Statutes § 52-352b (t); that would be void as a matter of public policy?" *Rockstone Capital, LLC* v. *Sanzo*, 327 Conn. 968, 173 A.3d 391 (2017). We affirm the judgment of the Appellate Court with respect to its conclusions that the appeal was taken from a final judgment and that the mortgage was a consensual lien. We conclude that certification was improvidently granted with respect to whether the cross appeal was taken from a final judgment and dismiss that portion of the appeal.

I

As threshold issues, we must address whether the Appellate Court had jurisdiction over the appeal and cross appeal. "The lack of a final judgment implicates the subject matter jurisdiction of an appellate court to hear an appeal. A determination regarding . . . subject matter jurisdiction is a question of law [and, therefore] our review [as to whether the Appellate Court had jurisdiction] is plenary." (Internal quotation marks omitted.) *Ledyard* v. *WMS Gaming, Inc.*, 330 Conn. 75, 84, 191 A.3d 983 (2018). Subject to certain exceptions, an appellate court's subject matter jurisdiction "is limited to final judgments of the trial court." (Internal quotation marks omitted.) Id. A final judgment exists "[w]hen judgment has been rendered on an entire complaint . . . ." Practice Book § 61-2. In this case, Rockstone's operative complaint exclusively sought foreclosure of the mortgage, and the trial court denied the relief requested. We conclude that this constitutes a final judgment and, thus, that the Appellate Court had jurisdiction over the appeal.

Once the trial court denied Rockstone's request to foreclose on the mortgage, it then sua sponte ruled in favor of Rockstone on the judgment liens, but did not set the amount of debt, manner of foreclosure or law days. Therefore, the Sanzos argue, the trial court did not render a final judgment. See *Morici* v. *Jarvie*, 137 Conn. 97, 103, 75 A.2d 47 (1950) ("[a final] judgment [in a foreclosure action] must either find the issues for the defendant or [find the issues for the plaintiff and] determine the amount of the debt, direct a foreclosure and fix the law days"). We disagree. This argument ignores the undisputed predicate fact that Rockstone did not seek foreclosure on the judgment liens in its operative complaint. As stated previously, the complaint sets the parameters for determining a final judgment. See Practice Book § 61-2. Particularly "under the unusual circumstances of this case"; *Rockstone Capital, LLC* v. *Sanzo*, supra, 175 Conn. App. 786; in which the parties agree that there was no basis to rule on the judgment liens; id., 788; the trial court's ruling on the

judgment liens, which fundamentally exceeded the scope of the complaint, does not defeat the final judgment it rendered on the mortgage.

After examining the entire record on appeal and considering the briefs and oral arguments of the parties, we also conclude that certification was improvidently granted on the question of whether the Appellate Court had jurisdiction over the Sanzos' cross appeal from the trial court's ruling on the judgment liens. The parties agree that the ruling on the judgment liens was improper. Id. Moreover, the trial court stated in its articulation: "Once the court voided the forbearance agreement and underlying mortgage, the remaining matter to be resolved involved judgment on the original judgment liens. . . . It was the court's intention to preserve the [Sanzos'] right to the homestead exemption while preserving [Rockstone's] right to sue on the original judgment liens." (Citations omitted.) In other words, if the trial court had concluded, as we do, that the mortgage was enforceable, it never would have reached the judgment liens. Therefore, the appeal is dismissed as to that issue.

II

The primary issue in this case is whether the mortgage that the Sanzos granted to Rockstone is enforceable. The Sanzos argue it is not because it deprives them of the homestead exemption, which is contrary to both the text of § 52-352b (t) and public policy. We disagree. Under the plain language of the statute, a homestead exemption is not available to a mortgagor. Nor, on the facts of this case, is the granting of a mortgage a violation of public policy. Therefore, we conclude that the mortgage is enforceable.

"We exercise plenary review over questions of statutory interpretation, guided by well established principles regarding legislative intent. See, e.g., *Kasica* v. *Columbia*, 309 Conn. 85, 93, 70 A.3d 1 (2013) (explaining plain meaning rule under General Statutes § 1-2z and setting forth process for ascertaining legislative intent)." *State* v. *Daniel B.*, 331 Conn. 1, 12–13, 201 A.3d 989 (2019). Exemptions are construed liberally in the debtor's favor. See *In re Caraglior*, 251 B.R. 778, 782–83 (Bankr. D. Conn. 2000).

Under our statutes governing postjudgment collection, a creditor may enforce a money judgment "against any property of the judgment debtor unless the property is exempt . . . ." General Statutes § 52-350f. It may do so via "foreclosure of a real property lien . . . ." General Statutes § 52-350f. " 'Exempt' " means "unless otherwise specified, not subject to any form of process or court order for the purpose of debt collection . . . ." General Statutes § 52-352a (c). Under the homestead exemption, a judgment debtor's "homestead" is exempt "to the value of seventy-five thousand dollars . . . ."

General Statutes § 52-352b (t). A " '[h]omestead' " is "owner-occupied real property . . . used as a primary residence." General Statutes § 52-352a (e). "Value" is "determined as the fair market value of the real property less the amount of any statutory or consensual lien which encumbers it . . . ." General Statutes § 52-352b (t). "[T]hese statutory provisions . . . mean that a judgment lien can attach on a homestead, but that such a lien cannot be enforced up to the amount of the exemption." *KLC, Inc.* v. *Trayner*, 426 F.3d 172, 175 (2d Cir. 2005).

Plainly, though, the homestead exemption does not apply to a consensual lien. See General Statutes § 52-352b (t) ("fair market value of the real property less the amount of any . . . consensual lien which encumbers it"). A mortgage is a consensual lien. E.g., *In re Wolmer*, 494 B.R. 783, 784 (Bankr. D. Conn. 2013) ("consensual liens [here, the mortgages]"); *L. Suzio Asphalt Co.* v. *Ferreira Construction Corp.*, Superior Court, judicial district of New Haven, Docket No. 351912 (October 19, 1993) (10 Conn. L. Rptr. 264, 265) ("consensual liens, such as . . . a mortgage"); see also 4 Collier on Bankruptcy (R. Levin & H. Sommer eds., 16th Ed. 2019) ¶ 506.03 [1] [a], p. 506-11 ("[c]ommon examples of voluntary [or consensual] liens include real property mortgage liens").

In this case, Rockstone does not seek to foreclose on the nonconsensual judgment liens initially filed against the Sanzos. Rather, it seeks to foreclose on the consensual mortgage later voluntarily granted to it by the Sanzos. Therefore, we agree with the Appellate Court that the homestead exemption does not apply.

Although the Sanzos concede the general point that the homestead exemption does not apply to mortgages, they make two arguments as to why the particular mortgage they granted to Rockstone should not be enforced. We find neither argument persuasive.

First, the Sanzos argue that their mortgage—a mortgage securing preexisting judgment debt—is not the type of mortgage contemplated by § 52-352b (t). This argument is not supported by a plain reading of the statute's text. The statute does not define "consensual lien," but could hardly refer to the concept more broadly: "*any* . . . consensual lien" is subtracted from the property's value in calculating the homestead exemption. (Emphasis added.) General Statutes § 52-352b (t). We disagree with the Sanzos that § 52-350f,[4] which limits a judgment creditor's collection efforts to nonexempt assets, is inconsistent with this reading of the homestead exemption. Nothing in § 52-350f prohibits parties from restructuring a judgment debt into another form, such as a consensual lien, to which the exemption would not apply. In fact, the Sanzos appear to concede that they could have properly restructured their judgment debt if they had only done so through

third-party financing, rather than directly through their creditor, Rockstone. Thus, we find no textual basis for holding that a mortgage securing judgment debt is excluded from the meaning of "consensual lien."[5]

Second, the Sanzos argue that a debtor may not waive the homestead exemption and that, on the facts of this case, the mortgage agreement they entered into with Rockstone, their judgment creditor, should properly be viewed as a de facto waiver of the exemption. We are not persuaded by either point.

"Waiver is the intentional relinquishment or abandonment of a known right or privilege." (Internal quotation marks omitted.) *Dinan* v. *Patten*, 317 Conn. 185, 195, 116 A.3d 275 (2015). A statutory right generally may be waived. Id. However, "a statutory right conferred on a private party, but affecting the public interest, may not be waived or released if such waiver or release contravenes the statutory policy." (Internal quotation marks omitted.) *Pereira* v. *State Board of Education*, 304 Conn. 1, 49–50, 37 A.3d 625 (2012).

Although there is considerable variation among the states as to the contours of and legal purposes underlying homestead exemptions; see, e.g., *Chames* v. *DeMayo*, 972 So. 2d 850, 856–57 (Fla. 2007); homestead exemptions are typically driven by interrelated policies that consider the welfare of both individual private citizens and the public at large. "The principal objective of the homestead laws is generally regarded as the security of the family, which in turn benefits the community to the extent that such security prevents pauperism and provides the members of the family with some measure of stability and independence." G. Haskins, "Homestead Exemptions," 63 Harv. L. Rev. 1289, 1289 (1950). More specifically, these laws seek to achieve security for debtors and their families by protecting their ability to remain in their homes, providing a financial cushion for those who would otherwise be unable to support themselves, or both. See R. Rivera, "State Homestead Exemptions and Their Effect on Federal Bankruptcy Laws," 39 Real Prop. Prob. & Tr. J. 71, 101–102 (2004) (noting homestead exemptions that are intended "to protect debtors' homes in bankruptcy because when debtors retain their homes, they are more likely to spend money in the local economy, which is in the state's best interest," and homestead exemptions that are intended to provide monetary relief "to prevent a debtor from becoming completely dependent on the state for financial support").

In addressing whether an individual may waive a homestead exemption, a court usually considers the form of the waiver. Waivers via mortgage are routinely permitted.[6] See 1 The Law of Debtors and Creditors (2019) § 6:70 ("perhaps the most common form of waiver involves the homestead exemption, which may typically be waived by the debtor granting a creditor a

mortgage"); 40 C.J.S., Homesteads § 102 (2019) ("[a]s a general rule, homestead rights may be waived by the parties entitled thereto by an act which evidences an unequivocal intention to do so" [footnote omitted]).

Some courts permit a waiver via mortgage because granting a mortgage on specific property allows the mortgagor to consider the specific consequences of default. For example, the Sanzos repeatedly cite a Florida Supreme Court decision barring a prospective waiver of the homestead exemption in an executory contract. See *Chames* v. *DeMayo*, supra, 972 So. 2d 857 (citing constitutional provisions, statutes and case law prohibiting "a general waiver of homestead or personal property exemptions in an executory contract"). But they omit from their discussion that court's express acknowledgment that a waiver via mortgage is enforceable: "[Our cases] do not prohibit a waiver of the homestead exemption; they simply require that such waivers be accomplished . . . by mortgage, sale, or gift . . . . Those who truly wish to waive their homestead exemption . . . can do so." (Citations omitted.) Id., 861–62. A waiver via mortgage is permitted because it "is made knowingly, intelligently, and voluntarily . . . with eyes wide open . . . ." (Citation omitted.) Id., 861. "In obtaining a mortgage, a homeowner is well aware that if the payments are not made, the home may be foreclosed upon. . . . [T]he very nature of the transaction implies the exercise of discretion and the contemplation of inevitable consequences." (Internal quotation marks omitted.) Id.; cf. *Beneficial Finance Co. of Colorado* v. *Schmuhl*, 713 P.2d 1294, 1297 (Colo. 1986) ("Our holding [that a judgment debtor may waive an exemption by granting a security interest] is supported by the expectations of the parties in secured transactions. A debtor who grants a security interest in specific property to a creditor expects foreclosure of that interest upon default."); *Lingle State Bank of Lingle* v. *Podolak*, 740 P.2d 392, 396 (Wyo. 1987) ("[t]he debtor cannot waive the privilege of claiming the exemption *in advance*" [emphasis added; internal quotation marks omitted]).

Other courts permit a debtor to waive an exemption on the theory that prohibiting such a waiver would go too far in restricting an individual's right to encumber property. For instance, the New York Court of Appeals has held that a debtor's exemptions are not meant to serve the "paternalistic function" of prohibiting a debtor from disposing of exempt property, or "the less drastic step" of encumbering it in exchange for consideration. *Matter of New York* v. *Avco Financial Service of New York, Inc.*, 50 N.Y.2d 383, 388, 406 N.E.2d 1075, 429 N.Y.S.2d 181 (1980). It recognized that "the law has not forbidden a debtor to execute a mortgage upon the property so protected and thus create a lien which may be foreclosed despite the property's exempt status . . . ." (Citations omitted.) Id.; see also, e.g., *United Bank of Bismarck* v. *Selland*, 425 N.W.2d 921, 925 (N.D.

1988) ("although the exemption statutes are designed to protect debtors from becoming destitute as a consequence of unforeseeable indebtedness, the statutes should not be construed to deprive an individual of his rights of ownership in exempt property . . . among which is the power to encumber, to sell, or otherwise dispose of it" [internal quotation marks omitted]); cf. *Moyer* v. *International State Bank*, 404 N.W.2d 274, 277 (Minn. 1987) ("[t]he statute does not forbid a debtor to mortgage protected property and to create a lien against identified property which can be foreclosed despite the property's exempt status").

Practical considerations support the reasoning in these cases. "[A] determination that a statutory exemption cannot be waived by a security agreement would severely restrict the availability of [much needed] credit to debtors who, in many cases, have few assets to use as collateral." *Beneficial Finance Co. of Colorado* v. *Schmuhl*, supra, 713 P.2d 1297; see also *Hernandez* v. *S.I.C. Finance Co.*, 79 N.M. 673, 675, 448 P.2d 474 (1968) ("[o]ften, such property is the poor man's only source of cash in an emergency and, if the law permits him to sell his exempt property, surely it permits the less drastic step of encumbering it").

This concept applies particularly to homestead exemptions because a homestead is often a debtor's best potential source of credit. "A debtor's equity in residential real property subject to a homestead exemption is often substantial. Thus, permitting the debtor to encumber the homestead through execution of a second mortgage or similar instrument is economically justified." J. Haines, "Security Interests in Exempt Personalty: Toward Safeguarding Basic Exempt Necessities," 57 Notre Dame Law. 215, 220 n.35 (1981); see W. Vukowich, "Debtors' Exemption Rights," 62 Geo. L.J. 779, 852 (1974) ("[p]ermitting waivers of exemptions and security interests in the more substantial exempt assets . . . is sound, since it permits persons to use the more substantial assets as collateral; in fact, these are the types of assets which represent the best collateral and which are most commonly used as such"); see also *Benchmark Bank* v. *Crowder*, 919 S.W.2d 657, 661 (Tex. 1996) ("[h]omestead owners must have the ability to renew, rearrange, and readjust the encumbering obligation to prevent a loss of the homestead through foreclosure"). In some scenarios, therefore, waiver of the homestead exemption actually serves the public policies underlying it by allowing a debtor to remain in his home and providing him with a source of funds to support himself.

In support of their argument that a debtor may not waive the homestead exemption, the Sanzos ignore the form of their waiver: a mortgage. Although the Sanzos' mortgage in this case involved an executory contract (the forbearance agreement), and therefore presents a scenario not addressed by the cases previously dis-

cussed, we are persuaded that the same principles still apply. We are not convinced that a waiver of the homestead exemption always contravenes the public policy behind it, such that it may never be waived.

The Sanzos find little support for their argument in Connecticut law. They rely primarily on *TuxisOhr's Fuel, Inc.* v. *Trio Marketers, Inc.*, Superior Court, judicial district of New Haven, Docket No. CV-04-4002067-S (October 26, 2005) (40 Conn. L. Rptr. 203), and *Haggerty* v. *Williams*, 84 Conn. App. 675, 855 A.2d 264 (2004), as examples of statutory rights that an individual may not waive in every circumstance. *Tuxis-Ohr's Fuel, Inc.*, concerned a provision in a personal guarantee contract that waived the homestead exemption. *Tuxis-Ohr's Fuel, Inc.* v. *Trio Marketers, Inc.*, supra, 204. *Haggerty* involved a provision in a mortgage that waived the relevant statute of limitations. *Haggerty* v. *Williams*, supra, 676–77. In each case, the court was concerned that allowing a debtor to waive a statutory protection "at the inception" of an agreement; id., 681; would mean a waiver was the result of "ignorance, improvidence, an unequal bargaining position or was simply unintended." (Internal quotation marks omitted.) Id., 682. These courts also feared that the public policy advanced by the granting of these statutory rights would erode by encouraging similar waivers " 'as a matter of routine.' " Id., 681; accord *Tuxis-Ohr's Fuel, Inc.* v. *Trio Marketers, Inc.*, supra, 205.

The present case does not involve a scenario, as in *Tuxis-Ohr's Fuel, Inc.*, and *Haggerty*, in which a debtor waived statutory protection "at the inception' " of an agreement; *Haggerty* v. *Williams*, supra, 84 Conn. App. 681; without a realistic chance to consider the consequences. When the Sanzos decided to grant a mortgage, they had already defaulted on the judgment debt and were actually (not just theoretically) facing foreclosure. They had the aid of counsel. They entered into a negotiated commercial agreement. They are not relying on a provision buried within the mortgage but, rather, on the mortgage itself. It was "obvious," they concede, that the purpose of this mortgage was to contract around the homestead exemption.

Nor, unlike *Tuxis-Ohr's Fuel, Inc.*, and *Haggerty*, is this a situation in which mortgages would be granted, and thus public policy would be undercut, merely " 'as a matter of routine.' " *Haggerty* v. *Williams*, supra, 84 Conn. App. 681. Before entering into the agreement, the Sanzos could choose between invoking the homestead exemption in the face of the foreclosure action and granting a mortgage. For the reasons just stated, they appear to have made this choice deliberately. It is not self-evident that judgment debtors in similar situations would routinely make the same choice to mortgage their homes, particularly if they had few other exempt assets and a homestead exemption represented their

best financial outcome. Moreover, as described previously, restructuring judgment debt might often work in a debtor's favor. Indeed, in 2009, the Sanzos received forbearance from foreclosure in exchange for the mortgage. Until 2014, they apparently complied with the terms of the forbearance agreement and remained in their home because of it.

Finally, the Sanzos and the amicus curiae, the Connecticut Fair Housing Center, urge us to look beyond the form of the mortgage to its substance, which they argue was merely a de facto general waiver. They contend that the mortgage did not secure any debt beyond the original judgment liens. They also note that it was not a novation or release of the judgment liens. Therefore, they argue, the only real effect of the mortgage was to waive the homestead exemption in the same manner as one would through a general contractual waiver. We disagree for two reasons.

First, Rockstone's interest secured by the mortgage was not identical to the interest secured by the judgment liens. The mortgage secured the judgment lien debt, as well as additional fees and costs stemming from the forbearance. The mortgage also had the effect of subordinating Rockstone's security interest, as two superior liens had been filed and recorded after Rockstone's judgment liens, but before the mortgage.

Second, although the forbearance agreement could have more clearly distinguished between the old debt (secured by the judgment liens) and the new (secured by the mortgage) by, for instance, granting a novation, the Sanzos were well informed about the consequences of default, and the purpose of the mortgage was clear.[7]

The judgment of the Appellate Court is affirmed insofar as that court determined that Rockstone's appeal was taken from a final judgment and that the mortgage was a consensual lien to which the homestead exemption does not apply, and insofar as that court reversed the trial court's judgment with respect to the denial of Rockstone's claim to foreclose on the mortgage and remanded the case for further proceedings; that portion of the appeal concerning whether the Appellate Court correctly concluded that the Sanzos' cross appeal was taken from a final judgment of the trial court is dismissed.

In this opinion the other justices concurred.

[1] Connecticut's homestead exemption is embodied in General Statutes § 52-352b, which provides in relevant part: "The following property of any natural person shall be exempt . . . (t) The homestead of the exemptioner to the value of seventy-five thousand dollars . . . provided value shall be determined as the fair market value of the real property less the amount of any statutory or consensual lien which encumbers it . . . ."

[2] The Housatonic Lumber Company also was named as a defendant but was defaulted for failure to plead and is not involved in this appeal.

[3] In its original memorandum of decision, the trial court relied on an express waiver of the homestead exemption contained within the mortgage itself. It concluded that the express waiver was void as against public policy, but that it was severable from the rest of the mortgage. It therefore granted

foreclosure of the mortgage, subject to the homestead exemption.

Neither party had relied on the express waiver, however, because they agreed that it was unnecessary. In its motion to reargue, Rockstone stated that it "was not relying upon the express waiver language contained in the [m]ortgage since the [m]ortgage, being a consensual lien, is not within the purview of the homestead exemption statute and thus no waiver argument is necessary." In their own motion to reargue, the Sanzos agreed that "the [c]ourt ruled in a manner not addressed by either party . . . ." Conceding that the express waiver in the mortgage was "actually an extraneous term," they reiterated their argument that "the [m]ortgage itself is a de facto waiver of the [h]omestead [e]xemption under the unique facts of this case."

The parties do not rely on the express waiver on appeal. See *Rockstone Capital, LLC* v. *Sanzo*, 175 Conn. App. 770, 782, 171 A.3d 77 (2017).

[4] General Statutes § 52-350f provides: "A money judgment may be enforced against any property of the judgment debtor unless the property is exempt from application to the satisfaction of the judgment under section 52-352a, 52-352b, 52-352d or 52-361a or any other provision of the general statutes or federal law. The money judgment may be enforced, by execution or by foreclosure of a real property lien, to the amount of the money judgment with (1) all statutory costs and fees as provided by the general statutes, (2) interest as provided by chapter 673 on the money judgment and on the costs incurred in obtaining the judgment, and (3) any attorney's fees allowed pursuant to section 52-400c."

[5] Legislative history is also, at best, unhelpful to the Sanzos, as debate did not distinguish between prejudgment and postjudgment mortgages. The homestead exemption for residential real property was enacted in No. 93-301, § 2, of the 1993 Public Acts. During debate in the House of Representatives, Representative Lee A. Samowitz did emphasize, however, that the homestead exemption was not intended to impair mortgages: "I want to clarify this. [The homestead exemption] does not affect mortgages. Mortgages are secured. They are not impaired. They won't be impaired to bankruptcy, they won't be impaired to foreclosure." 36 H.R. Proc., Pt. 30, 1993 Sess., p. 10,852; see also id., p. 10,826 ("consensual liens are not impaired by this amendment"); id., p. 10,832 ("[t]his is intended not to impair the statutory and the [consensual] lien").

[6] Several legislatures also have considered the form of the waiver. E.g., Alaska Stat. § 09.38.105 (2006) ("[a] waiver of exemption executed in favor of an unsecured creditor before levy on an individual's property is unenforceable, but a valid security interest may be given in exempt property"); Tenn. Code Ann. § 26-2-301 (c) (2017) ("[t]he homestead exemption shall not operate against . . . any debt secured by the homestead when the exemption has been waived by written contract"); W. Va. Code Ann. § 38-9-6 (a) (LexisNexis 2011) ("[a]ny waiver of the rights conferred by this article shall be void and unenforceable except to the extent that [1] such waiver is accompanied by a consensual security interest in the property in which the homestead exemption is asserted").

Connecticut's homestead exemption statute is silent on whether, or under what circumstances, a homeowner may waive the exemption. See General Statutes § 52-352b (t); see also 36 H.R. Proc., Pt. 30, 1993 Sess., p. 10,853, remarks of Representative Lee A. Samowitz ("[t]he proposed bill does not deal with the statutory right of waiver").

[7] We do not consider the other arguments advanced by the amicus because they were not raised by the parties. See *Dow & Condon, Inc.* v. *Brookfield Development Corp.*, 266 Conn. 572, 595, 833 A.2d 908 (2003).